George H. TIGNER, Appellant,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Appellee.

No. 22124.

United States Court of Appeals
Fifth Circuit.

Feb. 11, 1966.

Hartwell Davis, Montgomery, Ala., for appellant.

Ben Hardeman, U. S. Atty., Rodney R. Steele, Asst. U. S. Atty., Montgomery, Ala., for appellee.

Before MARIS,* RIVES and BELL, Circuit Judges.

RIVES, Circuit Judge:

This is an appeal from the judgment of the district court finding that there was substantial evidence to support the Secretary's decision denying to the appellant George H. Tigner disability insurance benefits under the Social Security Act, 42 U.S.C.A. §§ 416(i), 423, on the ground that he was not suffering from an impairment or impairments of such severity as to preclude him from engaging in any substantial gainful activity.

Tigner applied to the Social Security Administration July 11, 1962 [1] to establish a period of disability and for insurance benefits, stating that he had become unable to work May 1962 due to arthritis of his lower back and knees and varicose veins of his legs. On January 14, 1963, Tigner was advised by the Division of Disability Operations that although he met the earnings requirement he did not meet the disability requirement. Following disallowance of his request for reconsideration, he requested a hearing and the matter was heard by a Hearing Examiner on August 5, 1963; his decision was filed September 26, 1963. After reviewing the medical evidence, the testimony of Tigner and that of a vocational expert called by the Hearing Examiner, he found that Tigner had not established that he has impairments of

such severity as to preclude him from engaging in any substantial gainful activity. The Appeals Council denied review and the decision of the Hearing Examiner became final. Upon review by the district court, that decision was affirmed and this appeal followed.

The medical evidence and the testimony of Tigner reveal these facts: Tigner was born December 23, 1910, received schooling to the sixth grade, did farm work as a field hand and a sharecropper until he entered the military service in 1943. During the 30 months he was in the Army, he was a cook and baker. It appears he was discharged from the Army due to an arthritic disability. After his discharge from the Army, he farmed until 1953. On February 4, 1954, he was hospitalized with a complete motor and sensory paralysis from the umbilicus down; all reflexes were absent. Examination of the dorsal spine showed a destructive process involving the 9th and 10th dorsal vertebrae, with complete destruction of the intervertebral disc between. There was an associated paravertebral abscess in the area. Two surgical procedures were performed: one operation whereby the paravertebral abscess was opened to relieve the pressure on the cord, and a diagnosis of tuberculosis of the dorsal spine was given; and later a spinal fusion was accomplished. More than seven months later, September 26, 1954, he was discharged from the Veterans Administration Hospital, Tuskegee. On final recall visit to the hospital, July 5, 1956, his general condition was stated to be fair; he had occasional pain at the site of thoracotomy; he was discharged as having received maximum hospital benefits, the final diagnoses being: "(1) tuberculosis of D–9 and 10, treated, improved; (2) abscess, tuberculosis, paravertebral, treated, improved; (3) compression, acute of spinal cord, 10th dorsal vertebrae, with complete paraplegia, due to

---

* Of the Third Circuit, sitting by designation.

1. An application filed October 5, 1960 had been disallowed on the grounds that Tigner did not meet the earnings requirement under the Act.

(2), treated, improved." He wore a Taylor back support.

He was hospitalized at the Veterans Administration Hospital from June 27 to July 3, 1959, the clinical record showing the final diagnoses to be: "(1) degenerative arthritis of knee and lumbar sacral spine, untreated—unchanged; (2) Tuberculosis of the spine, arrested; (3) Ankylosis of the lumbar dorsal spine following surgery, untreated—unchanged." [Ex. 23].

In a Veterans Administration Report of Medical Examination for Disability Evaluation, dated March 1, 1960, a radiographic report showed, inter alia, "Two lower dorsal bodies" and "KNEES: Medial to the left condyle of femur there is seen a small periarticular calcific deposit." [R. p. 191.] And following an orthopedic examination on that day these, inter alia, were the impressions recorded: "2. Probable tuberculosis of the spine, with ankylosis and fixation of the spine, symptomatic, moderate, requiring wearing of a back brace" and "6. Osteoarthritis of the knees."

On December 15, 1960, Tigner was considered by the Veterans Administration to be permanently and totally disabled based on the disabilities of "tuberculosis, spine, arrested, with limitation of motion, marked; Arteriosclerosis, generalized; varicose veins and arthritis, knees." [Ex. 15.] He received a pension in the amount of $90.00 per month. On March 11, 1963, the Veterans Administration so advised the Social Security Administration, upon the request of Tigner, together with the information that Tigner receives outpatient treatment through the Veterans Administration office for "arthritis, knees for which he is service connected."

There are three medical reports submitted by Tigner's physician, Dr. G. C. Ussery, in response to questionnaires of the Social Security Administration,

dated October 10, 1960, August 16, 1962, and January 23, 1963, in which he reported that he has treated Tigner over a period of years and that Tigner was able only to do light work, and later that he could work only at intervals doing janitor work, and, finally, that Tigner is unable to work and is disabled.

A final summary made by the Veterans Administration Hospital, dated September 24, 1962, gives the following final diagnoses: "(1) Degenerative bone and joint disease, multiple, improved; (2) Tuberculosis of the spine, arrested; (3) Ankylosis of the lumbodorsal spine following surgery, Unchanged; and (4) Calcification of the medial collateral ligament of the left knee or Pellegrini-Stieda's Disease,[2] Unchanged." "STATUS OF SERVICE CONNECTED DISABILITY: Arthritis 10%—remains unchanged." [R. 211.]

Tigner was referred to Dr. John M. Higginbotham, an orthopedic surgeon, who reported on October 29, 1962 that, inter alia, Tigner jumped suddenly when the doctor touched the scar area, or near thereto, protesting that the doctor "was sending electric currents down into his right foot. The patient was grinning while expressing himself in this manner." Also, while Dr. Higginbothan was examining Tigner's knees the "patient claimed great tenderness laterally but it was not convincing." His diagnosis was: "(1) Tuberculosis, old, healed, thoracic spine with kyphosis at T9 moderate in degree with successful operative fusion. (2) Callosities, both feet treatable condition. (3) Left knee pathology not found. (4) Unco-operative patient. RECOMMENDATIONS: N/P [neuropsychiatric] examination." [Ex. 31.]

His work record and earnings were as follows: He was unable to work for a year after he left the Veterans Administration Hospital in 1954. During 1955 he was hired as a sweeper in a house

---

**2.** Pelligrini-Stieda Disease is defined as follows: "a condition characterized by a semilunar bony formation in the upper portion of the medial lateral ligament of the knee, due to traumatism." Dorland, The American Illustrated Medical Dictionary, 21st ed., p. 455.

which was being remodeled and earned $289.70. In 1956 he was hired by Skinner's Furniture Company in Roanoke to clean and dust. Occasionally he opened furniture crates and assembled furniture by attaching mirrors or drawer knobs. This work could be done sitting down and he had no lifting duties because the manager knew of his disability. He worked a full day, six days a week. After the manager died and was replaced by another in 1960, Tigner was directed to lift packages which he could not do and he was fired for insubordination. His earnings during that period were: 1956, $469.50; 1957, $1298.00; 1958, $1656.00; 1959, $1728.00; 1960, to March, $72,00; he did not work from April 1960 or during the year 1961. In 1962 he became employed again. He worked for Schleusner's Roanoke Department Store, where he did dusting and sweeping a few hours for two days each week at the rate of 75 cents per hour. His earnings for 1962 appear to be $317.00, and $67.76 for part of 1963. At the hearing in August, he testified that he continued to work there part-time, earning $4.00 to $7.00 each week, depending on whether he was able to work.

The Hearing Examiner called Miss Grace Marie Freyman, Director of Psychological Services at the Warm Springs Foundation, for an evaluation as to what jobs Tigner was qualified to perform. The following is the statement of the Hearing Examiner in respect to her testimony [R. p. 27.] :

"Miss Freyman testified that the claimant was physically unable to follow the vocations of cook or farmer, in which he had experience. He has no other skills to transfer to other fields, and training would be needed for any skilled work. He might be able to perform his old light job of assembling furniture, if it were available. She stated that if availability is no factor, claimant might be able to do the following jobs: (1) egg candler; (2) armature winder; (3) wrapper; (4) packer; (5) assorter. * * *

"Miss Freyman added that she had no knowledge as to the availability of employment in the area of claimant's residence."

Based on this evidence, the Hearing Examiner's findings were that even if there were some osteoarthritis (degenerative joint disease), this would fall short of the requirement for allowance, citing three medical treatises to the effect that this is an aging process which occurs in everyone's joints and does not become severe enough to cause any trouble to the great majority of people. [R. p. 24.] The Hearing Examiner then made the following statement [R. p. 25] :

"It is an obvious fact that literally millions of persons work daily with a variety of impairments characterized by uneasiness, so that the fact that work may cause discomfort does not convert partial impairment to 'inability to engage in any substantial gainful activity,' as required for entitlement under the law. (See Adams v. Flemming, 276 F.2d 901 (C.A.2))."

The test that no matter how painful in fact a condition is, it does not satisfy the statute since this is one of life's burdens was rejected by this Court in Butler v. Flemming, 5 Cir. 1961, 288 F.2d 591, 595; Hayes v. Celebrezze, 5 Cir. 1963, 311 F.2d 648, 651–652; Page v. Celebrezze, 5 Cir. 1963, 311 F.2d 757, 762–763; and Dodsworth v. Celebrezze, 5 Cir. 1965, 349 F.2d 312, 315; Accord, Aaron v. Flemming, M.D.Ala.1958, 168 F.Supp. 291, 295.

Also, it appears that the Hearing Examiner gave a tremendous amount of weight to the report of Dr. Higginbotham, who found no knee pathology; whereas the Veterans Administration medical reports consistently reported arthritis in the knee, as well as Pellegrini-Stieda Disease.

Furthermore, while the vocational testimony as to the jobs which Tigner might be able to perform was interesting, its relevancy is of doubt. Miss Freymann had no knowledge whether the suggested

jobs were available and the Hearing Examiner apparently considered that this was not a factor to be considered. That was evidenced by his several admonitions to Miss Freymann, such as "Concern yourself for the moment not with availability, but with capabilities" [R. 112]; by the weight he attached to the requirements of the thousands of jobs listed in the Dictionary of Occupational Titles; and finally by his statement in his decision:

"The hearing examiner recognizes that Miss Freymann, the vocational witness, has indicated that the claimant is limited in his vocational capabilities and may indeed experience difficulty in obtaining the type of work he can do due to limited employment opportunities in the area of his residence. But the question of availability of feasible employment is not a relevant factor in the determination of disability under the Act, which requires that impairment must be the primary reason for inability to engage in substantial gainful activity. Where an individual remains unemployed by reason of local economic conditions, such individual may not be found to be under a disability (Regulations No. 4, Section 404.1502(b)). Surely it was not the intent of Congress that an individual who could do nonarduous work, if given the opportunity, should receive disability benefits because he lives in an area where such work is scarce." [R. 28.]

■ While there is no duty upon the Hearing Examiner to find out whether there is actually such a job open for the claimant, there is certainly a question whether such jobs are available within the geographical area in which the claimant would normally be expected to compete in the labor market. As said in Kerner v. Flemming, 5 Cir. 1960, 283 F.2d 916, 921:

"Such a determination requires resolution of two issues——what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available, Aaron v. Fleming (sic), D.C.M.D. Ala.1958, 168 F.Supp. 291, 295."

See also, Butler v. Flemming, 5 Cir. 1961, 288 F.2d 591, 595; Hayes v. Celebrezze, 5 Cir. 1963, 311 F.2d 648, 654; Stancavage v. Celebrezze, 3 Cir. 1963, 323 F.2d 373, 375, 377; Thomas v. Celebrezze, 4 Cir. 1964, 331 F.2d 541, 546.

■ It is sufficient, in view of the Hearing Examiner's application of the wrong test and the lack of evidence in respect to availability, that this case should be remanded for further administrative proceedings. The judgment of the district court is therefore reversed and the cause remanded with directions to remand to the Secretary for consideration under the correct standards, for further development of vocational evidence, and for appropriate findings. See Ferran v. Flemming, 5 Cir. 1961, 293 F.2d 568, 571.

Reversed and remanded with directions.