Ollie ALSOBROOKS, Appellant,

v.

John W. GARDNER, Secretary of Health, Education, and Welfare, Appellee.

No. 22587.

United States Court of Appeals
Fifth Circuit.

Feb. 25, 1966.

Lampton O. Williams, Poplarville, Miss., for appellant.

Morton Hollander, Martin Jacobs, Attys., Dept. of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Robert E. Hauberg, U. S. Atty., for appellee.

Before GEWIN and COLEMAN, Circuit Judges, and McRAE, District Judge.

COLEMAN, Circuit Judge:

This action was brought by the claimant, Ollie Alsobrooks, against the Secretary of Health, Education, and Welfare, pursuant to section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to obtain judicial review of a final decision of the Secretary denying his application for disability insurance benefits under Title II of the Social Security Act as amended. On April 8, 1965, the District Court affirmed the Secretary's decision, and the claimant appeals.

The courts cannot and do not try these Social Security cases de novo. Our role is limited to a consideration of whether the decision of the Secretary is supported by substantial evidence. Ward v. Celebrezze, 5 Cir., 1962, 311 F.2d 115; Clinch v. Celebrezze, 5 Cir., 1964, 328 F. 2d 778; Aldridge v. Celebrezze, 5 Cir.,

1964, 339 F.2d 190. If it is, it must be upheld.

At the same time, courts cannot escape the duty of scrutinizing *the record as a whole* to determine whether the substantial evidence standard has been met.

■ To establish a disability under the Act a claimant must show that he is unable to do his former work and is unable to perform any substantial, gainful work, including work of a lighter type. Hicks v. Flemming, 5 Cir., 1962, 302 F.2d 470, and Celebrezze v. O'Brient, 5 Cir., 1963, 323 F.2d 989.

■ All the circumstances of each case must be considered in making the determination whether an applicant is able to work. In determining capacity to work, the age, training, work experience, physical faculties, and mental faculties of the claimant must be considered. Two issues must be decided—what can appellant do, and what employment opportunities are there for a man in his condition? Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916; Hicks v. Flemming, 5 Cir., 1962, 302 F.2d 470. We cannot order unemployment compensation under the guise of disability insurance. Hicks v. Flemming, supra.

■ The ability of the claimant to engage in substantial and gainful employment is not to be measured by the hypothetical average man, but by the particular claimant's capabilities. Celebrezze v. Warren, 10 Cir., 1964, 339 F.2d 833.

■ A claimant is not required by the use of a catalogue of the Nation's industrial occupations to go down the list and verbally negative his capacity for each of them or their availability to him as an actual opportunity for employment. Butler v. Flemming, 5 Cir., 1961, 288 F.2d 591.

■ "When a claimant's former employment is the only type of work he is capable of performing, the 'former work'

means 'any work' and the requirements of the Act are met." Celebrezze v. O'Brient, supra.

■ The Act must be administered with reason. Hayes v. Celebrezze, 5 Cir., 1963, 311 F.2d 648.

■ This Court held, in Celebrezze v. Kelly, 1964, 331 F.2d 981, that the Administrator must determine whether there is a reasonable opportunity for the claimant to compete, in the manner normally pursued by persons generally seeking work, for a job within his determined capabilities. In making this decision he must, of course, consider the matter of reasonable availability of jobs within the geographical areas which the claimant would normally be expected to consider if regularly in the labor market.

This Court has recently considered questions of work within the geographical area in which the claimant would normally be expected to compete in the labor market and the necessity for vocational evidence. Tigner v. Gardner (5 Cir., Feb. 11, 1966), 356 F.2d 647; Moncrief v. Gardner (5 Cir., Feb. 11, 1966), 357 F.2d 651. In *Moncrief* the Court held that the Secretary failed adequately to develop the vocational evidence, saying "[i]ndeed, there was no vocational evidence." In *Tigner*, the applicant was fifty-three years old at the time of the hearing before the Hearing Examiner, had a sixth grade education, had been a field hand and sharecropper until he entered the military service, was a cook and baker in the military service, was discharged from the Army due to an arthritic disability, again farmed until 1953, and was thereafter disabled by tuberculosis of the spine and other troubles. From 1955 to 1960, he worked sporadically as a sweeper, cleaner, and duster. He did other work which he could do sitting down. He again did the same kind of work in 1962 and 1963, but earned a total of only $384.76 in those two years. In deciding the case, the Court held: "While there is no duty upon the Hearing Examiner to find out whether there is actually such a job open for the claim-

ant, there is certainly a question whether such jobs are available within the geographical area in which the claimant would normally be expected to compete in the labor market."

■ The Administrator is required to make findings and conclusions, in which he takes all of these factors into consideration. When he does so, if there is evidentiary support in the record for his findings the decision is final and not to be reversed or modified.

The various cases brought to this Court have been decided in keeping with these standards.

For example, in Flemming v. Booker, 5 Cir., 1960, 283 F.2d 321, the claimant by reason of high blood pressure, psychoneurosis, and chronic nephritis was disabled to perform any work involving standing, sitting, walking, or lifting. The denial of benefits was reversed.

In Celebrezze v. O'Brient, supra, the claimant suffered from a paralyzed right diaphragm which prevented his return to construction work in which he had formerly been employed. The State Division of Vocational Rehabilitation had determined that he could do supervisory work. The denial of benefits was affirmed.

In the recently decided case of Gardner v. Gunter (5 Cir., December 21, 1965) 354 F.2d 755, the claimant suffered from pulmonary emphysema but a vocational specialist testified before the Hearing Examiner that there was work of certain types available in the home area of claimant which he was able to do. Benefits were denied.

Another case in point is Varnado v. Flemming, 5 Cir., 1961, 295 F.2d 693, in which it was held that there was nothing in the record to substantiate the finding of the Secretary that the claimant could work in certain fields.

## II

■ In the light of these applicable principles we now review the factual record upon which the Secretary denied benefits to the appellant.

The application was filed September 21, 1960, alleging appellant became unable to work in August, 1960, because of "heart trouble, lung congestion, bronchitis, and hearing trouble". From an examination of the photocopy of the application in the appellate file it is seen that this is appellant's description, in layman's language, given to the Social Security Representative to whom he made his application. On both consideration and reconsideration the application was denied. It was not until September 19, 1962 that a hearing was held by a Hearing Examiner. His decision was rendered on December 14, 1962. Appellant had compiled sufficient earnings to extend disability eligibility to March 31, 1964.

In 1961 claimant had worked in New Orleans for a period of not over five weeks, doing carpenter work. He testified that he quit because he just could not do the work. He would work two or three days and then have to be at home two or three days. This testimony is undisputed. He lived in the country, and had a wife and three children to support. He had not worked since 1961, and it had been necessary to heavily mortgage his home in order to furnish necessities for the family. He could not drive a car and did no work around the home, although the wife and children kept a garden.

There are fourteen written medical reports in the record. Of course, we shall not belabor this opinion with a detailed repetition of what they contain. The first report is that of Dr. S. S. Kety, who had been seeing the claimant professionally at intervals since 1956, and who last saw him January 11, 1961. On that latter date he diagnosed claimant as suffering from: 1. chronic bronchiectasis with emphysema; 2. coronary ischema with insufficiency; (3) osteoarthritis with recurrent and chronic sacroiliac sprain; 4. indirect inguinal hernia; 5. hemorrhoids; and 6. defective hearing. Dr. Kety felt that these disabilities were progressive in nature and stated, "patient cannot do any work, strain-

ing or lifting, standing or walking". He further noted that the patient "is 56 but appears older—about 60–65".

The Social Security Field Representative saw claimant personally on January 11, 1961, and filed a report. He stated, "the applicant completed the sixth grade, has had no other training of any kind, his reading and writing ability appear to be very poor, and he seemed to have difficulty in comprehending even simple questions or in formulating responses to them". The applicant stated to the Field Representative on that occasion that for five or six years he had suffered severe smothering spells and short windedness on even slight exertion. He had to sleep propped up on a number of pillows. If he walks more than a block or so, or stands for a few minutes, he has severe pain in both legs. The Representative further noted that the applicant has very poor hearing.

The Hearing Examiner in his formal findings stated "that at the time of the hearing the claimant heard conversational tones apparently with ease and responded to questions asked in a conversational tone of voice without apparent hesitation and without asking that the questions be repeated". Our examination of the hearing transcript reveals, however, that in the course of twenty-four typewritten pages of testimony the claimant fourteen times indicated that he did not hear the question and it was repeated by the Examiner.

At the request of the Mississippi Department of Vocational Rehabilitation, Dr. Therman T. Justice, Internist of Gulfport, examined the claimant on April 25, 1961. He reported that the patient appeared older than the stated age, is two-thirds deaf, that the heart was not abnormal clinically, that there is a complete right inguinal hernia, ventilation studies were not abnormal, electrocardiogram was borderline, that the patient did have arteriosclerotic heart disease, chronic bronchitis, and hemorrhoids. Dr. Justice gave no opinion as to the claimant's ability to work.

The record shows that on June 13, 1961, W. A. Adcox, Sr. had quite a bit of work in progress but declined to employ claimant specifically on account of his physical condition. The record further contains the statement of H. E. Asher of Picayune, Mississippi, dated June 26, 1961, in which he reported that claimant worked for him as a carpenter, that each time he worked he had trouble with shortness of breath and would have to stop and rest every thirty minutes, that he could do about $\frac{1}{6}$ the carpentry work of a normal, healthy man.

The State Department of Public Welfare had the claimant examined at the Associated Medical Center in Picayune, Mississippi, on November 17, 1961. Prior described disabilities were found, with the statement that they were permanent, slowly progressive, and could not be substantially reduced by treatment.

Dr. Sam Massey, on September 18, 1962, found the same disabilities and believed him to be totally and permanently disabled.

Dr. S. S. Kety gave the same opinion on September 13, 1962.

The Mississippi State Sanatorium confirmed the diagnosis of emphysema and hypertension on August 23, 1962.

On September 8, 1962, Dr. H. B. Cowart found claimant to be totally and permanently disabled and, on September 28, 1962, Dr. G. B. Stewart rendered the same diagnosis.

The findings of the Secretary contain no assertion that claimant was physically able to return to his former employment. Rather, he found that the claimant "can engage in substantial, gainful activity which is of a light or sedentary nature", saying that there were many fields of work open to the claimant such as miscellaneous bench work, miscellaneous leather work, miscellaneous food handling, etc. He stated that the source of the above mentioned fields of work and the job titles is "Estimates of Worker Trait Requirements for Four Thousand Jobs, U. S. Department of La-

bor, 1956". There was no independent proof to this effect.

■ It will be noted that this record contains evidence from six doctors. None said that this claimant was able to engage in substantial gainful employment of a "light or sedentary nature". Four doctors stated that he was totally and permanently disabled to follow any gainful employment. We realize that doctors' statements are not, in and of themselves, binding upon the Secretary. However, the expert opinions here were founded upon prior physical examination and diagnosis. They were not disputed by any other doctor.

While the Mississippi State Department of Vocational Rehabilitation had the claimant examined by Dr. Justice in April, 1961, no witness from that Department came forward, as in Gardner v. Gunter, supra, to testify that Alsobrooks was capable of substantial gainful employment as of December 1, 1960, nor did any witness say that there was light sedentary employment available to claimant in the geographical area as set forth in Celebrezze v. Kelly, supra. The record contains no evidence in this regard other than the views of the Hearing Examiner. And his views were based on a government publication that was six years old at the time he rendered his decision.

In the absence of some affirmative evidence to that effect, it is wholly unrealistic to suppose that any employer would be interested in employing a man who was two-thirds deaf, who seemed to have difficulty in comprehending simple questions and in formulating responses thereto, and who was suffering from emphysema, chronic bronchiectasis, arteriosclerotic heart disease, general osteoarthritis, hernia, and other physical defects.

Faced with this kind of record, it is no answer to say that claimant might theoretically be capable of performing some kind of light job, the nature of which and the availability of which was not shown by any affirmative proof.

We hold that the Secretary's decision was not supported by substantial evidence and must be

Reversed.