John W. GARDNER, Secretary of Health, Education and Welfare, Appellant,

v.

Luther L. SMITH, Appellee.

No. 22392.

United States Court of Appeals Fifth Circuit.

Oct. 11, 1966.

David L. Rose, Frederick B. Abramson, Attys., Dept. of Justice, John W. Douglas, Asst. Atty. Gen., William Wayne Justice, U. S. Atty., Sherman L. Cohn, Atty., Dept. of Justice, Washington, D. C., for appellant.

Kyle Wheelus, Jr., Beaumont, Tex., Marcus, Weller, Wheelus & Green, Beaumont, Tex., of counsel, for appellee.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and CHOATE, District Judge.

RIVES, Circuit Judge:

This is an action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) for judicial review of the Secretary's decision denying the claimant's application to establish a period of disability and for disability insurance benefits under sections 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i) and 423.[1] The district court in passing upon the claim found that erroneous, improper and repudiated legal standards were applied and, hence, that the decision should not enjoy the insulation of the substantial evidence test. The court further found that, if the proper legal standards were applied, there is no substantial evidence in the record to support the Secretary's decision denying the claimant benefits under the Act. A judgment was entered reversing the decision of the Secretary and directing him to grant the claimant's application.

The primary question to be determined on this appeal is whether the Secretary applied the proper legal standards. If

---

1. The specific issue before the Hearing Examiner and the Appeals Council was whether the claimant was "disabled" within the meaning of the Social Security Act during the effective period of his application filed on December 15, 1960.

he did, then the only remaining question is whether his findings are supported by substantial evidence.[2] If the correct legal standards were not applied, then the question is whether the district court erred in making its own findings of fact and granting relief, or whether the case should have been remanded for further action by the Secretary.

The claimant was born near Buna, Texas, on September 15, 1911, and lived in that vicinity all of his life. His formal schooling ended with the fourth grade. He worked on his father's farm until 1947 when, at age 36, he went to work in the Kirby Lumber Company sawmill, and worked steadily for 13 years, or until July 6, 1960. On June 14, 1957, while lifting a board, his foot slipped and he felt a pulling in his side. Five days later he realized that his back had been hurt. He was taken to a hospital in Beaumont, Texas, where a surgeon removed his appendix. He got no relief to his back and that has bothered him ever since. He missed eight weeks' work in 1957. He received a notice from the Industrial Accident Board with a form of claim for workmen's compensation. He filled out the form but, instead of filing it, simply "stuck it down in my drawer," and held the report for about three years. During this last three-year period he had worked up by seniority to the job of "top man," the softest job available at the sawmill. That involved nothing more than walking up and down along the catwalk high in the building and pushing buttons to release lumber when it had accumulated and should be removed. There was a seat from which he could see the lumber accumulating and he was able to alternate sitting, standing and walking. Notwithstanding the ease of this work, on about July 6, 1960, he felt that he could not continue and was away from work until August 23. He returned and worked until September 9, 1960, when he finally gave up and has not worked a day since.[3]

For several months in 1962, from June 8 to September 2, the claimant was confined in a mental institution, the Rusk State Hospital at Rusk, Texas. A niece, giving a personal interview, stated that she thought the mental illness started five years prior to that date or in 1957. The superintendent of the hospital certified that no electro shock therapy was administered but that tranquilizers and other drugs were used, and "the patient seemed to make a very nice adjustment." His psychiatric impairment was variously diagnosed as a depressive psychosis, a manic depressive reaction, a chronic anxiety reaction with marked hypochondriasis and a chronic conversion reaction. The superintendent of the hospital certified that "work tolerance was not considered during the patient's hospitalization," but that, "it was felt that the patient, so long as he was in the remission he was in at the time of his discharge, could handle himself well in the ordinary circumstances of life."

The 365-page administrative record contains the varying opinions of five general practitioners, two psychiatry and neurology specialists, a neurological surgeon, two psychiatric specialists and an internist. Numerous other opinions were contained in hospital and clinical records. None of the doctors suggested that the claimant is a malingerer. His family physician who had treated him since 1938 diagnosed his trouble as "psychoneurosis with schizophrenia with possible multiple sclerosis, lumbosacral arthritis. In my opinion, Luther L. Smith is totally disabled." On the other hand, the neurological surgeon found that, "This patient seems to have no neurologic disease of any type." Opinions of other doctors varied between

2. 42 U.S.C. § 405(g) provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

3. In 1960 he employed counsel to prosecute his workmen's compensation claim. He received a settlement from which he netted only about $2,000.00. His present able counsel became interested in him through counsel's representation of the compensation insurance carrier.

these two extremes. There was less variation in the medical evidence as to the claimant's physical impairment.

A vocational consultant gave his evaluation of the clamant's vocational capabilities. He thought that the claimant had the capacity to perform jobs which were primarily sedentary in nature and fairly routine. Specifically, he felt that the claimant could work as a "bander" or baked goods wrapper, an egg inspector or defeatherer of chickens, a gateman, laundry marker, hand labeler, working with coils for small motors, and inspecting types of glass, lenses, and bottles. The district court gave careful consideration to the testimony of this vocational expert, and summarized his testimony as follows:

"( 1) Obtaining employment involves two things: (a) getting the job, and (b) doing the job or being able to do it. (Tr. 231.)

"( 2) Luther Smith is not a fit candidate for large industries for employment, they won't hire him. (Tr. 233.)

"( 3) He is not fit to work in any building trade. (Tr. 233.)

"( 4) There is always the job of getting him past the employment office. (Tr. 233.)

"( 5) As a practical matter no company doctor will pass any applicant with a present back condition. (Tr. 234.)

"( 6) A physical examination would be a barrier that would eliminate him. (Tr. 234.)

"( 7) Getting any job requires an interview (Tr. 236.)

"( 8) From the standpoint of employability, if all humanity were placed on a sliding scale, Luther would be close to the bottom. (Tr. 236.)

"( 9) If Luther and one other applied for any of the jobs suggested by the witness, the other fellow would have to be in pretty sorry shape if he is not to be hired over Luther. (Tr. 236–237.)

"(10) In terms of getting the job I would say that his chances are very poor. (Tr. 237.)

"(11) Luther has really got problems as far as getting hired. (Tr. 237.)

"(12) All jobs suggested by the witness involve assembly line or production line jobs. (Tr. 237–238.)

"(13) Luther is obviously going to have to take periodic breaks frequently, the chances are he would not be able to maintain production and would not be able to perform the job. (Tr. 238–239.)

"(14) An employer would not deliberately inflict himself with problems of the magnitude to be anticipated by hiring Luther Smith. (Tr. 241.)

"(15) From the standpoint of age as well as disability Luther Smith is getting toward the end of his productive life from the standpoint of beginning a career. (Tr. 247.)

"(16) Looking at it from the employer's standpoint in any of the jobs mentioned, Luther is not a desirable candidate for employment. (Tr. 253.)

"(17) If a man cannot stand and cannot sit, then the point is that there is no job for him. (Tr. 256.)"

The district court concluded as follows:

"The Court is of the opinion that there has been no showing that Luther Leemon Smith is looking for 'unemployment compensation' as the Secretary has asserted; that is, from a full reading of the record, the Court is of the opinion that this is not a case where an employable individual cannot find work or is temporarily out of a job. The record shows that Luther Leemon Smith is not employable at any of the jobs *in existence* (not merely available) in this geographic locality. Simply stated, the record reflects that

he cannot get a job but, assuming arguendo that he did get a job, his medically determinable condition is such that he could not keep it. He had such a job and for three years, he 'toughed it out' but in July, 1960, he had to give up what was the lightest, easiest job at Kirby Lumber Corporation, and this job was lighter and easier than any of the theoretical jobs suggested by the Hearing Examiner and Appeals Council.

"The transcript is long, but it conclusively establishes that since July, 1960, Luther Leemon Smith has been, is, and will be unable to engage in substantial gainful activity by reason of medically determinable physical or mental impairments which can be expected to be of long-continued and indefinite duration."

The difference in viewpoint as to the proper legal standards to be employed is fairly stated in the decision of the Appeals Council as follows:

"The Appeals Council also agrees with the conclusion of Frederick Wiener, the vocational witness, that the claimant had the residual physical and mental capacity to engage in a variety of jobs which are primarily sedentary in nature and which involve eye-hand coordination and the ability to perform hand movements. A fair reading of the vocational consultant's expert testimony cannot but leave the impression that he was of the opinion that the claimant could function in many jobs as they are commonly found in the national economy. The vocational consultant also testified in some detail as to the marketablity of the claimant's remaining skills. While it is true that Mr. Wiener's testimony indicates that the claimant might experience considerable difficulty in obtaining work, particularly in the area where he resides, the hearing examiner carefully distinguished the question of the claimant's ability to *engage* in substantial gainful activity from that of his ability to obtain employment.

"At the supplemental hearing claimant's counsel stated his position with respect to the ultimate issue of 'disability' under the Act as follows:

" ' * * * it doesn't much matter to me whether a man can do a job, if he can't get it, and it doesn't much matter to me whether a man can get a job, if he can't do it, he has got to get it and do it, and *if he cannot get a job due to physical disability* then under my concept of it he is disabled.' [Emphasis supplied.]

"However, it is the Secretary's belief that inability to obtain employment due to the existence of a physical or a mental impairment must be distinguished from 'inability to engage in any substantial gainful activity *by reason of*' such impairment [42 U.S.C. 416(i) (1)] [emphasis supplied]. In short, the test under the Social Security Act is not the ability of the claimant to *obtain* employment which he could perform, but rather whether he could *perform* the work were he able to obtain the employment.

"Counsel for the claimant also objects to the hearing examiner's consideration of the question of whether there were employment opportunities for a person with the claimant's skills and limitations in the national economy during the effective period of the application. Counsel apparently believes the proper question for consideration is whether opportunities for employment are available in the claimant's local geographical area. The Appeals Council rejects this view."

In part pertinent to this case, "disability" is defined by the Act, 42 U.S. C.A. § 423(c) (2), as follows:

"(2) The term 'disability' means—

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months * * *."

At the outset we reject the claimant's position which would interpret "any substantial gainful activity" as requiring that jobs, which the claimant, but for his impairment, would be able to perform, are actually open and ready to be filled. As we said in Celebrezze v. O'Brient, 5 Cir. 1963, 323 F.2d 989, 992, " * * * the Act is not an unemployment compensation law." [4] The inquiry is not whether there are vacancies in jobs which the claimant may be able to fill, but whether there are jobs for which the claimant may reasonably be expected to compete.

In order to fulfill the purpose of the Act, the test of disability must be realistic and practical, rather than merely theoretical. While a job in the sense of "any substantial gainful activity" may exist even though there is no present vacancy, there must be a reasonable expectation that the claimant may be expected to compete for such a job in the future. Thus, if the job is available only to long-time employees, its existence means nothing to outsiders.

The Secretary apparently adopts the nationwide test, asserting that if the claimant can perform a job and that job exists within the national economy, the claimant is not disabled. This Court is firmly committed to the issue of "reasonable availability of jobs within the geographical areas which the claimant would normally be expected to consider if regularly in the labor market." Celebrezze v. Kelly, 5 Cir. 1964, 331 F.2d 981, 982; see also, Tigner v. Gardner, 5 Cir. 1966, 356 F.2d 647, 651; Thomas v. Celebrezze, 4 Cir. 1964, 331 F.2d 541, 546.

The Secretary strongly relies on the holding in Celebrezze v. O'Brient, supra, 323 F.2d 989, 992, that jobs need not be "available for him in Kosciusko, Mississippi," to support his claim that the national economy must be viewed. O'Brient held that the Act was not an unemployment statute and, therefore, reversed a district court decision that the test for disability concerned the existence of job openings. This Court in O'Brient did not address itself to the issue whether the existing jobs for which a claimant is capable of performing must be found in the claimant's locale or in the national economy.

In this case, however, the vocational witness testified as to employment opportunities within a 150 mile radius of the claimant's home, and both the Hearing Examiner and the Appeals Council made findings based on such testimony. Therefore, if the only error were the Secretary's adherence to a nationwide test, we would hold that to be without injury to this claimant.

In the present case, the Appeals Council forthrightly asserts that " * * the test under the Social Security Act is not the ability of the claimant to obtain employment which he could perform, but rather whether he could perform the work were he able to obtain the employment." To us that test seems theoretical, unrealistic, and not in conformity with the purpose of the Act. As this Court said in Celebrezze v. Kelly, supra, 331 F. 2d at 982:

"The duty of the administrator is to hear the evidence as to the physical capabilities of the claimant, to consider the nature and type of work for which he is still qualified, if any, and to determine whether the claimant's failure to obtain a job in one of these categories results from his physical condition rather than from any other cause. Celebrezze v. O'Brient, 5 Cir., 323 F.2d 989. He must determine whether there is a reasonable opportunity for the claimant to compete, in the manner normally pursued by persons genuinely seeking work, for a job within his determined capabilities."

There must be a reasonable opportunity to be hired if the job were open and applications for employment were

4. See also Tigner v. Gardner, 5 Cir. 1966, 356 F.2d 647, 651; Frith v. Celebrezze, 5 Cir. 1964, 333 F.2d 557, 561; Robinson v. Celebrezze, 5 Cir. 1964, 326 F.2d 840, 841.

being taken. Firth v. Celebrezze, 5 Cir. 1964, 333 F.2d 557; Hodgson v. Celebrezze, 3 Cir. 1963, 312 F.2d 260; Hall v. Flemming, 6 Cir. 1961, 289 F.2d 290; Kerner v. Flemming, 2 Cir. 1960, 283 F.2d 916. If a physical or mental impairment prevents one from obtaining a job, or from even being considered for the job, he is just as unable to engage in that activity as he would be were he unable to perform the work after he had obtained the employment. The ability to perform work existing in the appropriate labor market requires a determination of whether the claimant would be considered for employment if a job vacancy occurred. If, in practice, the claimant could not reasonably expect to be hired, then no job exists for him.[5] The Act asks if the claimant is able to engage in substantial gainful work. If no one would hire him, he cannot engage in substantial gainful work. Extended to its broadest reaches, the Secretary's position would nullify the purpose of the Act, for, unless the claimant is bedridden and incapable of any movement, there most probably is some work he physically could do, though there might be no likelihood that he could successfully compete for the job.

The legislative history of sections 416 (i) and 423 does not support the Secretary's position. Disability insurance was made part of the Social Security Act in 1956. C. 836, Title I, § 103(a), 70 Stat. 815 (1956). The insurance benefits provision extended an earlier amendment enacted in 1954 providing for the so-called "disability freeze." C. 1206, Title I, § 106(a)–(d), 68 Stat. 1079 (1954). Under the disability provisions, a claimant is entitled to disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." 42 U.S.C.A. § 423(c) (2).

The Senate Finance Committee approving the disability "freeze" provision of H.R. 9366 [S.Rep. 1987, 83rd Cong., 2nd sess. (1954), at pp. 20–21] stated that:

"Only those individuals who are totally disabled by illness, injury, or other physical or mental impairment which can be expected to be of long-continued and indefinite duration may qualify for the freeze. The impairment must be medically determinable and preclude the individual from performing any substantial gainful work * * *."

Though there is no indication in the report as to the meaning of the word "performing," it seems that the Committee meant the ability to do such tasks or engage in such activity so as to be employable. There is no language requiring that the claimant, to be classified as disabled, be unable to do any tasks whatsoever. It seems to us that the word "preclude" is broad enough to encompass cases where the impairment makes impossible the obtaining of a job or being hired in order to perform work the claimant is physically able to do. Later on the report (at p. 21) notes:

"there must be a present inability to *engage* in substantial gainful work by reason of such impairment (recognizing, of course, that efforts toward rehabilitation will not be considered to interrupt a period of disability until the restoration of the individual to gainful activity is an accomplished fact). The physical or mental impairment must be of a nature and degree of severity sufficient to justify its con-

5. The Fourth Circuit in Thomas v. Celebrezze, 331 F.2d 541, at 546, emphasized the desirability of having the Secretary focus on the question from the point of view of an employer: "Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs. It is unrealistic to think that they would hire anyone with the impairments of this claimant." Accord: Blankenship v. Celebrezze, S.D.Va.1964, 232 F.Supp. 229. See Brill v. Celebrezze, E.D.N.Y.1964, 232 F.Supp. 296.

sideration as the cause of failure to *obtain* any substantial gainful work. [Standards for evaluating the severity of disabling conditions] will reflect the requirement that the individual be disabled not only for his usual work but also for *any* type of substantial gainful activity." [Emphasis added.]

The Social Security Act requires that the disabled individual be referred to State vocational rehabilitation agencies, so that he may be retrained and restored to gainful work. 42 U.S.C.A. § 422. This rehabilitation provision indicates that the disabled individual is an individual unable to perform tasks in order to be eligible for gainful work. If he could do work so as to be able to compete for a job, he would not need rehabilitation, but only an employer willing to hire him. The person able to perform so as to be a *reasonable candidate for a job if* one were vacant, but unable actually to obtain employment, must turn to unemployment compensation laws.

 Though the Senate Report is not completely elucidating as to what is meant by the term "disability," the intent of those urging the adoption of some form of disability insurance was "to insure that persons would not be reduced to virtual destitution and dependent upon public assistance." S.Rep. 2133, Minority Views, 84th Cong., 2nd sess. (1956) (accompanying H.R. 7225) at p. 128. Such intention could only be carried out if disability be found to exist when the claimant's impairment prevents him from being a reasonable candidate for employment. It would be wholly unrealistic to hold that though no employer would hire a person because of his physical or mental impairment, the person is still not disabled because he could do certain tasks or duties connected with jobs existing within the labor market. In such a situation there really exists an inability to engage in substantial gainful activity by reason of impairment, when but for the impairment, the person could compete for a job.

 This view is supported by the Minority Report accompanying the 1956 amendment [c. 836, Title I, § 103(a), 70 Stat. 815 (Aug. 1, 1956)] to the Social Security Act, providing for disability insurance: [6] "Under a sound social-insurance program, Americans should be protected against the fundamental hazards which would otherwise destroy their earning power and reduce them to beggary." S.Rep. No. 2133, Minority Views, 84th Cong., 2nd sess. (1956) (accompanying H.R. 7225) at p. 128. If an individual is unemployable because of his physical or mental impairment, he is disabled.

 We conclude that the Secretary failed to employ the proper legal standards in making his determination of the claimant's disability. There should have been a determination by the Secretary of whether or not the claimant's physical or mental impairment would prevent him from being hired to fill jobs, if such jobs were open in the area in which the claimant could reasonably be expected to compete. If the hiring practices and policies of employers will not permit the employment of a man, who because of an impairment could not "carry his load," then he must be considered disabled. It seems reasonable to conclude that an employer will not hire an applicant when a complete analysis of the facts indicates that the applicant most probably will not be effective because of a physical or mental impairment and must be released because of such ineffectiveness. If there were a reasonable chance that he could be hired to do work which he in fact is capable of doing, then Smith should not be considered to be disabled.

 Recognizing the immense amount of time this claimant has spent in presenting his cause to the appropriate administrative bodies and then to the courts, we feel that a final disposition

---

6. The Minority Report favored passage of the Amendment which was finally approved by the Senate.

should be made at this point.[7] On motion by the Secretary, this case has already once been remanded for further administrative proceedings. Clearly, section 423 was enacted to protect the disabled from economic destitution and resorting to charity. If the claimant is indeed disabled, he should not be subject to lengthy delays which obviously postpone his receiving statutory benefits. Case law has usually required that when the Secretary fails to resolve the crucial issues, the Court should not enter or direct the order which shall be entered, but instead should remand for further proceedings. See 2 Am.Jur.2d Administrative Law, §§ 763 and 765, and the cases cited therein. Frith v. Celebrezze, 5 Cir. 1964, 333 F.2d 557, 561; Tigner v. Gardner, 5 Cir. 1966, 356 F.2d 647, 651. However, when the record is as fully developed as the one in this case and there seems little or no likelihood that additional evidence would be presented at a new hearing, a Court can determine whether substantial evidence would support the Secretary if the appropriate test had been applied. 42 U.S.C.A. § 405(g). A final determination at this time, if warranted by the facts, is desirable. Stancavage v. Celebrezze, 3 Cir. 1963, 323 F.2d 373; Ber v. Celebrezze, 2 Cir. 1964, 332 F.2d 293; Aaron v. Flemming, M.D. Ala.1958, 168 F.Supp. 291, 296; Parfenuk v. Flemming, D.Mass.1960, 182 F. Supp. 532, 536; Moke v. Celebrezze, N.D. Calif., 1964, 236 F.Supp. 174, 177, 178; Brill v. Celebrezze, E.D.N.Y.1964, 232 F. Supp. 296.

Under the circumstances of this case, it was proper for the district court to conclude from the administrative record that the claimant could not have secured substantial gainful employment. Considering Luther Smith's physical and mental impairments and the vocational evidence, the only supportable finding which can be drawn from the record is that he was unable to engage in substantial gainful activity because of his impairments. If the appropriate test had been applied, the Hearing Examiner could have reached no other conclusion.

The judgment is therefore affirmed.

---

7. Since September 9, 1960, this claimant has not been gainfully employed and his application for disability benefits was filed on December 15, 1960, more than 5 years ago.