**Samuel W. ODOM, Plaintiff,**

v.

**John GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 3844-65.**

United States District Court
S. D. Alabama, S. D.
Sept. 28, 1967.

Michael J. Salmon, Mobile, Ala., for plaintiff.

D. Broward Segrest, Asst. U. S. Atty., Mobile, Ala., for defendant.

## OPINION

PITTMAN, District Judge.

Plaintiff seeks review of a decision of the Appeals Council of the Department of Health, Education and Welfare adopting a determination of the Hearing Examiner, made January 28, 1965, that he had failed to establish a period of disability to qualify for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C.A. §§ 416(i) and 423.

Review of Social Security cases is not de novo but is limited to a consideration of whether the decision of the Secretary is supported by substantial evidence. If the right of review is to mean anything, however, "courts cannot escape

the duty of scrutinizing *the record as a whole* to determine whether the substantial evidence standard has been met." Alsobrooks v. Gardner, 357 F.2d 110, 112 (5th Cir. 1966). After a review of the entire record, this Court is of the opinion that the decision of the Hearing Examiner must be reversed. Many of the crucial findings are not supported by substantial evidence, and the record discloses that the proper standards for determining disability under the Act were not applied.

Before discussing the evidence presented by this record, it would seem appropriate to set forth the legal standard for determining whether a claimant is disabled within the meaning of the Social Security Act. In order to qualify for benefits a person must prove not only that his infirmities prevent him from working at his former occupation, but also that he is unable to perform any substantial gainful work. Hicks v. Fleming, 302 F.2d 470 (5th Cir. 1962).

As Judge Rives has pointed out, however, the phrase "any substantial activity" cannot be literally applied or the whole purpose of the Act would be defeated: "No matter how infirm, or disabled, or sick a man is, if he still possesses some of his faculties in some degree of mobility, he is not in the strictest sense unable to perform 'any substantial activity'." Butler v. Fleming, 288 F.2d 591, 595 (5th Cir. 1961). Therefore once a claimant makes a substantial showing that he is unable to work, he is not charged with the burden of proving that there is no job anywhere in the nation which he could do in order to make out his claim. Hayes v. Celebrezze, 311 F.2d 648, 654 (5th Cir. 1963). The legal standard for establishing a disability involves a dual question:

(1) what can appellant do? and

(2) what employment opportunities are available to a man who can only do what the claimant can do. And in finding the answer "mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available."

Stringent as is the statutory standard of disability, it is to be administered with reason. Were it otherwise few would ever be able to qualify. Id. at 654.

The Court's main objection to this decision concerns the Hearing Examiner's treatment of the second part of that dual question, but first it is necessary to deal with part (1) and determine what the claimant is still capable of doing. This inquiry involves the medical evidence in the case and the observations of several H.E.W. claims representatives as well as the claimant's own testimony.

While working as a stevedore August 25, 1959, claimant suffered a fall in which he injured his back. His injury was diagnosed as sacroiliac sprain, and all told has required four different operations. His condition is thought static and no further operations are advisable (Record 10, Exhibits 18 and 21). Apparently as a result of his operations the claimant has experienced leg and arm trouble. He is unable to stoop, bend, or lift anything. He experiences muscle spasms, severe headaches and nervousness. Slight activity such as finger work is said to cause back pain and walking as much as three or four blocks can cause leg cramps (Record p. 9). Dr. Hannon, the claimant's physician, has prescribed sitz baths, injections, and a steady dosage of various tranquilizers to help control his various impairments. Further physical therapy is felt to be pointless. (Record 9, Exhibit 22).

A detailed discussion of the medical evidence in the record [Exhibits 17, 18, 19, 20, 21, 22, 26, 27] is beyond the scope of this opinion. Reports of four doctors are in evidence. Of these two are not of much probative value. Dr. Mudd's letter to Travelers Insurance Company (Exhibit 27) reports that claimant's "course has been very slow and in fact somewhat discouraging," but that letter was written in 1961, before the completion of all the surgery. Dr. Patton, by whom claimant was examined at the request of the Alabama vocational service, felt the claimant was exaggerating his injuries

(Exhibit 19). This opinion was rendered without benefit of X-rays or the claimant's medical history, however, and the one page letter states that "it is thoroughly difficult to evaluate such a person in one visit." In view of the later and better informed opinions of the other two doctors contradicting this conclusion, it should not be given much weight.

The significant medical evidence, then, consists of the report of Dr. DeVane, another doctor who examined claimant at the request of the state vocational service, and various reports of Dr. W. C. Hannon whose office has been following claimant's case since 1959. Dr. DeVane discussed the claimant's complaints and found his back motion to be "markedly limited, approximately 50%, in all directions, especially flexion." After examining the X-rays and surgical history he determined that the claimant had a 35% permanent partial disability of the body as a whole. The report concluded:

> I do not feel that this patient will be able to return to hard manual labor but I believe that he could do lighter duties and be gainfully occupied if the duties did not involve heavy lifting, stooping, or bending.

Exhibit 20.

Dr. Hannon has concurred in the finding of 35% disability of the body as a whole and in the conclusion that any form of laborious work is beyond the claimant's capabilities (Exhibits 18, 21, 22, 26). This conclusion apparently was accepted by the Hearing Examiner. (Record p. 20) Dr. Hannon's judgments as to the claimant's ability to do other forms of work seem to have changed from one report to another. On two occasions, April 8, 1964, (Exhibit 21) and December 2, 1964, (Exhibit 26) he seemed to imply that he did not think the claimant fit for any work, while on June 12, 1964, (Exhibit 22) although observing that the "ultimate prognosis is not good", he stated the claimant might do very light work requiring no motion or use of his back. The December 2, report to H.E.W. is the latest medical evidence in the record:

> The patient was a stevedore at the time of his injury on 8–25–59, and he can never hope to return to this type of laborious work, and I do not know of anything else he is capable of doing.

The Hearing Examiner interpreted this statement as follows: "The doctor simply did not know what else the claimant was capable of doing. The latter opinion accurately reflects the limitations of the doctor's expertise in such matters." (Record p. 20) Although this interpretation seems a bit strained, the Hearing Examiner is not bound by the doctor's statements, in and of themselves, in any event. Alsobrooks v. Gardner, 357 F.2d 110 (5th Cir. 1966).

In addition to the restrictions on the claimant's physical movement brought about by the fall and subsequent operations, there is a great deal of evidence in the record that the claimant is suffering from associated nervous disorders. His doctor has prescribed Soma, Equanil, and Librium to try and control tension and muscle spasms. (Record p. 9, Exhibits 21 and 26) In addition, his treatment consists of daily sitz baths, and frequent injections to help alleviate persistent pain (Record p. 9, Exhibit 21). Judging from the reports of the H.E.W. field representatives (Exhibits 12 and 16), the treatments have not had much effect:

> He has severe pains in his back and legs. At times he is unable to get out of bed. He cannot stay up all day at any time. He has to lie down in bed about 4–6 hours in the day time. He cannot rest at night without a tranquilizer. When he had an operation in 1959, it affected his nerves and they seem to be getting worse. He shakes for no apparent reason. When he hears a noise, he feels very weak and shaky and perspires a great deal. Dr. Hannon is still treating him.

Exhibit 16.

There is no evidence from persons familiar with the claimant indicating that these conditions do not exist as described, or that the references to the

claimant's difficulty in moving about, rising from chairs, inability to bend over, etc. (Record p. 76, Exhibits 12 and 16) are not founded in fact. Mr. Chandler's letter (Exhibit 14) expresses some doubt as to the legitimacy of the claimant's complaints, but like Dr. Patton's letter, this statement was made without benefit of medical records and reveals doubt as to its own soundness. While such statements may be considered, they are not entitled to the same weight as those made by persons more familiar with the claimant's condition. The Court does not find that the Hearing Examiner ever made any findings as to whether the nervous side effects, difficulties of locomotion, etc., exist as described in the testimony and exhibits. Such findings are necessary as an aid to determining whether the claimant is "employable" as discussed below.

The second part of the dual question suggested by the Court in *Hayes,* supra, as the proper method for determining whether a disability exists within the meaning of the Act is: "what employment opportunities are available to a man who can only do what the Claimant can do?" 311 F.2d at 654.

The claimant, in this case, a Negro between the age of forty-five and forty-nine at the time of the hearing, has spent all his life working in positions which should be classified as manual labor rather than white collar jobs.

From a review of the record it appears that he has at least satisfied the language of the *Hayes* case at 654 by making a substantial showing that he is unable to engage in any substantial gainful activity. Since his injury in 1959, the claimant has attempted to find employment on his own and sought rehabilitation and employment through the state vocational services. (Record p. 68) Although the claimant sought help for a period of about two and one-half years from the state agency for the handicapped (Record p. 74), he was told that they knew of no work suitable for a person in his condition because of the danger of paralysis, and that no one would wish to be responsible for him. (Record pp. 69, 75)

A letter by Mr. Chandler of the Alabama Vocational Rehabilitation Service indicates that agency's conclusion that rehabilitation was not feasible (Exhibit 14). A report by Mr. White (Exhibit 15) indicated that aptitude tests given to claimant and one other man were discontinued after twenty-five minutes and had to be classified as unsuccessful. The Hearing Examiner seemed impressed by the statement that "they did not have the educational qualifications to pursue the examination or else they were not attempting to pursue the activity of the test." (Record p. 14) It should be noted that this one paragraph "Report of Contact" made no attempt to distinguish between the performance of the claimant and the other man taking the test at the same time. When questioned about the test at the hearing the claimant stated "I got so nervous and shaky that our instructor, or advisor, or whatever you call him, he discontinued the test. He said I wasn't able to continue." (Record p. 75)

There are references throughout the record to the claimant's nervous condition and the drugs and tranquilizers which have been prescribed for it. In a Report of Contact made by a federal claims representative about two months after the aptitude test the same nervousness was observed: "W/E seemed excessively nervous. Tears came in his eyes as he talked. He seemed to experience pain and much discomfort during the interview and I got the impression that he felt utterly helpless to help himself." (Exhibit 16)

Despite the presence of much testimony and material in the record which seems to indicate a possibility at least that the claimant is unsuited for any type of work, the Hearing Examiner did not attempt to determine whether there were, in fact, any jobs which the claimant could perform. He apparently did not feel it necessary to develop any vo-

cational evidence because of his view of the disability standard:

> The claimant's established limitations reveal him as a man whose impairments are not of that severity contemplated by the Act and the regulations. It is therefore unnecessary to enter into any consideration of the claimant's employability, including his work history, educational background, or age, since the claimant has failed to establish himself as disabled within the terms of the Act. (Record p. 21)

■ That statement does not represent the law in the Fifth Circuit as this Court understands it. In 1959 the claimant, while working as a stevedore received injuries which according to all the informed medical testimony and the Clemmon's affidavit (Exhibit 28), will make it impossible for him to pursue his former work on the waterfront. The record also contains statements by various members of the Alabama vocational and rehabilitation services, and by the neurological surgeon who treated the claimant for a period of over five years, that they know of no work for which he is suited. Having presented such evidence the claimant may not be forced "to negative his capacity to do every possible job in the catalogue of the nation's industrial occupations." *Hayes,* supra, at 654. Rather it becomes the affirmative duty of the Hearing Examiner to consider the physical capabilities of the claimant and the requirements of any job he may still be capable of performing:

> He must determine whether there is a reasonable opportunity for the claimant to compete, in the manner normally pursued by persons genuinely seeking work, for a job within his determined capabilities. * * * [and also] consider the matter of reasonable availability of jobs within the geographical areas which the claimant would normally be expected to consider if regularly in the labor market. The administrator is required to make findings and conclusions, in which he

takes all of these factors into consideration.

Celebrezze v. Kelly, 331 F.2d 981, 982 (5th Cir. 1964).

This the Hearing Examiner failed to do. Rather he relied on the Dictionary of Occupational Titles (2d ed. 1949), the Occupational Outlook Handbook (U.S. Dept. of Labor 1961), and Worker Trait Requirements for 4,000 Jobs (U.S. Dept. of Labor, 1956) to show that claimant's old job as a boiler fireman no longer required physical strength, and that "sedentary employment possibilities exist for laborers * * * in the inspection of small light products, eg. cutlery, fabricated plastic products, and fireworks." Resort to such listings of job titles to establish theoretical employment opportunities without the introduction of evidence that any such jobs actually exist in the claimant's vicinity has repeatedly been disapproved by the Court of Appeals for this circuit. See particularly Alsobrooks v. Gardner, 357 F.2d 110 (5th Cir. 1966) which involved the same book here relied on in a similar factual situation:

> nor did any witness say that there was light sedentary employment available to claimant in the geographical area as set forth in Celebrezze v. Kelly, supra. The record contains no evidence in this regard other than the views of the Hearing Examiner. And his views were based on a government publication that was six years old at the time he rendered his decision.

Id. at 115. Accord, Tigner v. Gardner, 356 F.2d 647, 651 (5th Cir. 1966).

■ Similarly all of the old jobs formerly held by the claimant which the Examiner determined to be within his capabilities involved positions held in Lorain, Ohio prior to the claimant's move to Mobile. The recent case of Gardner v. Smith, 368 F.2d 77 (5th Cir. 1966) has made it very clear that the "nationwide test, asserting that if the claimant can perform a job and that job exists within the national economy, the claimant is not disabled," is unacceptable to the Fifth

Circuit. Id. at 83. Since the Hearing Examiner took no evidence to determine whether the jobs of pipe inspector or other jobs of like nature mentioned in his findings actually exist in the Mobile area, it is apparent that the discredited nationwide test was applied. This, of course, does not mean that the Hearing Examiner had to find that such a job was open at that time for the claimant to fill. The Social Security Act is not an unemployment compensation law. Hicks v. Flemming, 302 F.2d 470 (5th Cir. 1962), but as the Court observed in Tigner, supra, 356 F.2d at 651 "there is certainly a question whether such jobs are available within the geographical area in which the claimant would normally be expected to compete in the labor market." Thus, in Moncrief v. Gardner, 357 F.2d 651 (5th Cir. 1966) where the Examiner found that the claimant was still capable of performing the light work done at her last job in Chicago the decision was reversed and remanded to the Secretary for development of vocational evidence:

> There was no evidence that work of that kind on such a basis is available in reasonable proximity to the claimant's home in Leeds, Alabama. Indeed, there was no vocational evidence.

Id. at 652–653.

■ Although the Hearing Examiner took no vocational evidence he did suggest that the claimant might find employment as a carpenter or plumber. (Record p. 20) Since on the same page a finding was made accepting the medical conclusions—"no heavy lifting, stooping, bending or any use or strain of the back," the Court finds these suggestions unconvincing. It is difficult to conceive of a plumber or carpenter who could not bend, stoop, or do any work involving lifting or back strain. The only reference to those trades which can be found in the record is an inquiry in a 1963 Labor Department letter (Exhibit 11) asking whether the claimant ever had any experience in those fields (he has not).

Since there is some evidence in the record that the claimant has driven an automobile since his injury (or at any rate did so up until several months prior to the hearing) (Record pp. 81–82), the Hearing Examiner concluded that he could find employment driving an automobile:

> Evaluated minimally, his driving ability and riding endurance means that he could be a cabdriver, chauffeur, busdriver, or parking lot attendant.

(Record p. 22)

Without taking vocational evidence such a finding is not supported by substantial evidence. The record shows the claimant could drive a car only when it was equipped with full power equipment including a hand brake (Exhibits 5 and 16). Certainly there is a great difference between doing occasional personal driving and driving full time for hire. It is unlikely that any one would consider him for such employment. The Court finds the case of Celebrezze v. Raley, 330 F.2d 755 (5th Cir. 1964) cited by the Examiner inapposite since nothing in that decision indicates any physical infirmities comparable to those of the present claimant. That claimant had an ear injury.

■ Since this case must be reversed and remanded to the Secretary for the development of vocational evidence, it would be well to point out that the Fifth Circuit has recently further clarified the standard for determining a claimant's ability to engage in "substantial gainful activity" within the meaning of 42 U.S.C.A. Section 416(i). In Gardner v. Smith, 368 F.2d 77 (5th Cir. 1966) the Secretary argued that the test under the Social Security Act was merely whether the claimant was capable of performing a certain job and "not the ability of the claimant to *obtain* employment which he could perform." Id. at 83 (emphasis in original). The Court rejected that position as unrealistic and in conflict with the purposes of the Act. The opinion stressed that if a person's impairments prevented him from effectively competing for an existing job then

48

he was just as disabled as one who could not perform the work after obtaining the employment. Since the Court elaborated upon its statement in *Kelly*, supra, concerning the reasonable opportunity to compete in the labor market, an extended quotation seems justified:

> The ability to perform work existing in the appropriate labor market requires a determination of whether the claimant would be considered for employment if a job vacancy occurred. If, in practice, the claimant could not reasonably expect to be hired, then no job exists for him. The Act asks if the claimant is able to engage in substantial gainful work. If no one would hire him, he cannot engage in substantial gainful work. Extended to its broadest reaches, the Secretary's position would nullify the purpose of the Act, for, unless the claimant is bedridden and incapable of any movement, there most probably is some work he physically could do, though there might be no likelihood that he could successfully compete for the job.

368 F.2d at 84.

Finally, the Hearing Examiner makes a finding that the claimant is not motivated for work. (Record pp. 20–21) Since he expressly refused to base the decision on that finding there is no necessity for the Court to determine whether it is supported by substantial evidence on the record as a whole.

### ORDER

The decision of the Appeals Council adopting the conclusions of the Hearing Examiner is reversed and the case is remanded to the Secretary for the development of vocational evidence, and further consideration in the light of Gardner v. Smith, 368 F.2d 77 (5th Cir. 1966), Alsobrooks v. Gardner, 357 F.2d 110 (5th Cir. 1966), Moncrief v. Gardner, 357 F.2d 651 (5th Cir. 1966), Tigner v. Gardner, 356 F.2d 647 (5th Cir. 1966) and Celebrezze v. Kelly, 331 F.2d 981 (5th Cir. 1964) to determine whether the claimant has a reasonable opportunity to compete for a job within his capabilities in his geographical area.