**Bobbie F. BRIDGES, Appellant,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Appellee.**

**No. 23076.**

United States Court of Appeals
Fifth Circuit.

Nov. 3, 1966.

---

Al Schulman, Houston, Tex., Dixie & Schulman, Houston, Tex., of counsel, for appellant.

James R. Gough, Asst. U. S. Atty., Woodrow Seals, U. S. Atty., Robert C. Maley, Jr., Thomas L. Morrill, Asst. U. S. Attys., Houston, Tex., for appellee.

Before WISDOM, BELL and AINS-WORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Bobbie F. Bridges filed this action under the Social Security Act to review the final decision of the Secretary [1] which denied him a period of disability and monthly disability insurance benefits. The district judge upheld the secretary's decision denying relief to claimant on the basis that the court was bound by the determination of the Secretary if there was substantial evidence in the record to support his findings and the court was unable to say there was not sufficient evidence to support the determination. Claimant had been accorded a full hearing with his own attorney before an examiner of the Social Security Administration who found that appellant was not entitled to disability benefits. The Appeals Council of the Administration declined to review the examiner's findings.

The Social Security Act (42 U.S.C. § 301 et seq.) has been amended subsequent to the Secretary's decision in this case, and the new provisions of the statute apply to case on judicial review in which no final decision has yet been made. Sections 303(b) and 328(d), (42 U.S.C. §§ 416(i) (2), 402(j) (2)). The amendments have changed the definition of disability in Section 303(a) (42 U.S.C.A. § 416(i) (1)) so that the "long continued and indefinite duration" requirement has been eliminated; [2] also, there is a change relating to the effective life of application in Section 328 (42 U.S.C. § 402(j) (2)). The hearing examiner based his decision in this case on the disability definition then in force, and on the effective life of the application under the old law, and these provisions of law have now been changed. Therefore, the Secretary states in his brief to this court that he "desires to reconsider the case under the amendments and in addition intends to obtain collateral medical and vocational development including consultative examinations. For this reason the Secretary, although urging the affirmance of the decision as to the matters it decided, also requests this Court to remand the case generally to the Department for further administrative action." We have concluded that the circumstances warrant remanding the case generally in order that an entirely new decision may be reached after further hearing.

Claimant lives at Cleveland, Texas, forty miles distant from Houston. He was educated through the tenth grade but has had no vocational or specialized training He has been a painter and sandblaster for Shell Chemical Company for fifteen years, terminating on February 8, 1962, at age 43, at which time he had attained fifteen years of service in Shell's employment. He was then eligible for, and granted, disability retirement pension from Shell when he voluntarily ceased work at that time with approval of Dr. N. D. Hines, the company physician who certified his disability. His troubles began in 1958 when he was operated on for stomach ulcer, though he had prior surgery for an appendectomy in about 1952, and a right inguinal herniorrhaphy in 1953. During the operation in 1958, which was performed by Dr. Burt B. Smith, a surgeon at Houston, he sustained a cardiac arrest with a rather prolonged episode of cerebral hypoxia. Fifteen days later further surgery in the same area was performed without incident. A ventral hernia developed at the site of the incision and Dr. Mark H. Latimer, a general practitioner at Houston, in September 1958 performed surgery on the hernia, but in 1959 it recurred and is now about 6 inches by 3 inches in size. Since that time the right inguinal hernia recurred and a left inguinal hernia has developed. Claimant now has three hernias.

---

1. As authorized by Section 205(g) of the Social Security Act (42 U.S.C. § 405(g)).

2. The disability requirement is now one which "has lasted or can be expected to last for a continuous period of not less than 12 months."

As a result of the cardiac arrest, claimant sustained some permanent brain damage which caused moderate impairment in speech and a slight impairment in gait, described as a slight limp. The effect was to prevent claimant engaging in climbing in his work. He returned, however, to his former job as a painter and worked continuously until his retirement on February 8, 1962, though he states that he dragged on until eligible for disability pension. His activities in climbing and heavy lifting at work were restricted because of his physical condition. But he continued to work because of economic necessity, though his hernias were bothering him. When he reached the fifteen-year period of employment with Shell which would allow a disability pension, he quit working, he said, because his hernias were bothering him. He has never worked since nor has he attempted to secure employment. He is ambulatory, drives an automobile and is able to feed chickens, calves and hog at his farm home. He claims that he is physically disabled and that this impairment causes "inability to engage in any substantial gainful activity." See 42 U.S.C. §§ 416(i) (1), 423(c) (2). That is the test here, whether he can engage in such activity.

Numerous physicians testified or furnished statements to the examiner both in support and in opposition to claimant's position. Dr. Latimer, who operated on him for the ventral hernia in 1958, furnished a statement that he considered claimant disabled and that the chances of correcting the recurrent epigastric hernia were remote. He stated that because of claimant's prior cardiac arrest resulting in some brain damage "any surgeon would be very reluctant to do additional surgery." Dr. Smith, who performed the 1958 operation on claimant for stomach ulcer, in a written report stated that the claimant's hernias "most likely can be corrected by surgical repair; however, it is understandable that a man who has had such serious complications following surgery would be reluctant to undergo such surgery." Dr. Hines, Shell's physician, stated in a written report that

claimant is bothered with dizziness when he climbs, his hernias have disabled him from doing heavy lifting and he would not qualify for work as a painter; that he is a risk for any employer "based on the present compensation laws." Dr. Schuleman, a neurosurgeon employed by the Secretary in this case as a consultant, wrote a report referring to the impairment of Bridges' speech and slow down of his fine coordination, but that the electroencephalogram of claimant was normal. Dr. Wheeler, also employed by the Secretary as a consultant, certified in a written report that the herniae could be adequately repaired and that in his opinion claimant was not eligible for total disability. He stated, "After the above surgical procedures I believe that he can still carry out his duties as a painter with the minimal neurological deficit present." Dr. Beard, an internist selected by the Secretary, testified that the prior cardiac arrest "is not an absolute contraindication to surgical repair of his herniae." He did not examine claimant but based his opinion on a study of the various medical reports and from hearing Bridges testify. He said that since at least two surgical operations have been done on claimant since the cardiac arrest occurred he did not believe that the prior cardiac arrest was an absolute contraindication to further operative procedures. He thought therefore that surgical repair of the herniae was feasible based principally upon the reports of Drs. Smith and Wheeler. He also believed that the herniae were of such a nature that they should be repaired in order to relieve claimant of the discomfort and disability from which he presently suffers. He said he believed two separate surgical operations would be necessary, however, to repair the herniae, though he felt the surgeon would have to ascertain this.

Claimant was also examined in 1962 at the Veterans Administration Hospital in Houston and certified for a veteran's disability pension of $75 per month which he now receives.

As a result of this information derived from the several physicians, the examiner

found that though there was a conflict in the medical evidence as to whether or not surgical repair of claimant's herniae should be undertaken he was "constrained to find that such surgery could be undertaken with reasonable safety." He quoted 20 C.F.R. 404.1502(g) to the effect that "an individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity."

The Secretary introduced vocational evidence at the hearing through the witness, Frederick Wiener, Director of the Vocational Guidance Service in Houston, a United Fund agency, that there were employment opportunities available to persons who have medical impairments such as those from which Bridges suffers. He said that in his opinion jobs existed in the economy in the Houston labor market which Bridges can perform, such as dental polisher, gateman, solderer, mail sorter, paster, gasket inspector. He reiterated that these were jobs which he felt claimant "can perform," being lighter jobs which are available in the Houston labor market, which is only forty miles distant from Cleveland. He said that such jobs exist in the Houston area and are well within Bridges' capacity to perform. When asked whether he would give assistance to Bridges, he said, "Unfortunately we have a long waiting list and a small staff," and indicated that "it is not the easiest thing in the world to place these people." As a result of this testimony, though the hearing examiner

accurately summarized Mr. Wiener's testimony, he made no specific finding or conclusion in reference thereto.

 The Social Security Act (42 U.S.C. § 405(g)), provides in part that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." In reviewing a Social Security Administration denial of benefits, a court must not retry the case de novo [3] and may not substitute its judgment for that of the Secretary,[4] or make its own independent appraisal of the evidence.[5] However, a reviewing court may not abdicate its traditional judicial function,[6] nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable,[7] and whether the hearing examiner applied correct legal standards to the evidence.[8] The scope of review is limited,[9] and if the examiner's findings are supported by substantial evidence, they are conclusive and are not to be reversed or modified by the courts.[10] Substantial evidence is more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept to support a conclusion.[11]

 In this case Bridges contends that he is unable, because of his physical impairment, either to obtain or perform any work. He is afraid he will have another cardiac arrest if surgery is performed on him. It is not clear from the examiner's report whether he finds that claimant is able to perform work now [12] or whether he would be able to do so after surgical procedures for his herniae have been performed. On either basis, assuming that he could perform work of

3. Alsobrooks v. Gardner, 5 Cir. 1966, 357 F.2d 110.

4. Martlew v. Celebrezze, 5 Cir. 1963, 320 F.2d 887.

5. Jones v. Celebrezze, 7 Cir. 1964, 331 F.2d 226.

6. Thomas v. Celebrezze, 4 Cir. 1964, 331 F.2d 541.

7. Alsobrooks v. Gardner, supra.

8. Frith v. Celebrezze, 5 Cir. 1964, 333 F.2d 557.

9. Page v. Celebrezze, 5 Cir. 1963, 311 F.2d 757.

10. Celebrezze v. Kelly, 5 Cir. 1964, 331 F.2d 981.

11. National Labor R. Board v. Columbian Enameling & Stamping Co., 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939).

12. The trial judge, however, found that there "is clear support for a determination that plaintiff could continue to work even though the hernias could not be corrected."

a lighter nature than his former occupation, the examiner has failed to resolve the crucial issue of whether or not his physical impairment would prevent him from being hired to fill jobs. Mere ability to perform such jobs is insufficient to justify a denial of disability benefits. Specific findings by the examiner are necessary on the issue of whether claimant's physical condition would prevent him from being hired or from competing for jobs, for us to determine whether correct legal standards have been applied in deciding this case. If claimant's physical condition is such that he can engage in some substantial gainful activity, such as light work, it is not enough, as Mr. Wiener testified, that claimant can perform these jobs—it is necessary also that there be a showing of a reasonable opportunity for the claimant to compete in the manner normally pursued by persons genuinely seeking work, for a job within his determined capabilities. See Celebrezze v. Kelly, 5 Cir.1964, 331 F.2d 981; Alsobrooks v. Gardner, 5 Cir.1966, 357 F.2d 110. No such showing has been made here. As Judge Rives recently held in an opinion of this court in Gardner v. Smith, 5 Cir.1966, 368 F.2d 77.

"If a physical or mental impairment prevents one from obtaining a job, or from even being considered for the job, he is just as unable to engage in that activity as he would be were he unable to perform the work after he had obtained the employment. The ability to perform work existing in the appropriate labor market requires a determination of whether the claimant would be considered for employment if a job vacancy occurred. If, in practice, the claimant could not reasonably expect to be hired, then no job exists for him. The Act asks if the claimant is able to engage in substantial gainful work. If no one would hire him, he cannot engage in substantial gainful work. Extended to its broadest reaches, the Secretary's position would nullify the purpose of the Act, for, unless the claimant is bedridden and incapable of any movement, there most probably

is some work he physically could do, though there might be no likelihood that he could successfully compete for the job."

In the same case Judge Rives also wrote:

"There should have been a determination by the Secretary of whether or not the claimant's physical or mental impairment would prevent him from being hired to fill jobs, if such jobs were open in the area in which the claimant could reasonably be expected to compete. If the hiring practices and policies of employers will not permit the employment of a man, who because of an impairment could not 'carry his load,' then he must be considered disabled. It seems reasonable to conclude that an employer will not hire an applicant when a complete analysis of the facts indicates that the applicant most probably will not be effective because of a physical or mental impairment and must be released because of such ineffectiveness."

Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available. Hicks v. Flemming, 5 Cir.1962, 302 F.2d 470. The hearing examiner did not resolve the issue whether or not claimant's impairment would prevent him from being hired to fill jobs or whether he would have a reasonable opportunity to compete for a job within his determined capabilities in his geographic area. There was no testimony at all on this important issue from the vocational witness and accordingly no finding by the examiner. Until proper findings are made we are unable to sustain the present decision as supported by substantial evidence.

The circumstances therefore warrant our remanding this case to the Secretary for further proceedings generally. It is also necessary that it be remanded as the Secretary requests, for further proceedings in the light of the amendments to the Social Security Act, which we have already mentioned. It is noted that the

Secretary "intends to obtain collateral medical and vocational development including consultative examinations." This is all to the good for we believe the greatest care should be exercised by the examiner before finding that claimant may, with reasonable safety, undergo probably two more surgical operations. Claimant has had five surgical operations between the years 1950 and 1959, one of which resulted in prolonged cardiac arrest to which we have already referred. We will, of course, scrutinize the examiner's findings with equal care to determine if he has applied proper legal standards in connection with his findings about proposed surgery for claimant and whether these findings are supported by substantial evidence. On remand all of the present record may be used, the parties will be free to supplement it by additional evidence, and an entirely new decision must be reached on that total record. Cf. Frith v. Celebrezze, 5 Cir.1964, 333 F.2d 557; Hayes v. Celebrezze, 5 Cir.1963, 311 F.2d 648; and Page v. Celebrezze, 5 Cir.1963, 311 F.2d 757.

Reversed and remanded.