Hulon GARNER, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of Health, Education, and Welfare, Defendant.

No. DC69–55–S.

United States District Court, N. D. Mississippi, Delta Division.

Dec. 30, 1971.

David R. Hunt, of Sullivan, Smith & Hunt, Clarksdale, Miss., for plaintiff.

Falton O. Mason, Jr., Asst. U. S. Atty., Oxford, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

Plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C.A. § 405(g)) to obtain judicial review of a final decision of the Secretary of Health, Education, and Welfare, denying his claim for social security disability benefits.

The plaintiff filed an application for a period of disability and for disability insurance benefits on July 3, 1968, alleging that he became unable to work on May 20, 1968 at age 47. Subsequently, this date was changed to May 4, 1965. This application was denied initially and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration, after the Mississippi State Agency, upon evaluation of the evidence by a physician and a disability examiner, had found that the plaintiff was not under a disability. The hearing examiner, before whom the plaintiff and his attorneys appeared, considered the case *de novo*, and on February 4, 1969, found that the plaintiff was under a disability commencing May 4, 1965. On its own motion, the Appeals Council reviewed the hearing examiner's decision, and a hearing was held at which the plaintiff's attorney appeared and submitted additional evidence. After consideration, the Appeals Council reversed the decision of the hearing examiner and found that the plaintiff was not under a disability at any time through March 31, 1966, when he was last insured for social security disability purposes.

Following denial of his claim by the Appeals Council, plaintiff brought this action seeking judicial review of the decision. On motion of defendant, the court remanded the case to the Secretary of the Department of Health, Education, and Welfare for further proceedings. Upon receipt of additional evidence, including another disability application filed by plaintiff on October 17, 1969, the hearing examiner, before whom the plaintiff, his witnesses, and his representative appeared for the further hearing, prepared a recommended decision in which the examiner found that the plaintiff was not under a disability starting on or before March 31, 1966, when he last met the special earnings requirements of the disability provisions of the Social Security Act. After consideration of the entire record, including additional evidence, the Appeals Council rendered a decision on February 26, 1971, which approved and adopted the examiner's recommended decision. Hence, the decision of the Appeals Council became the final decision of the Secretary.

The precise issue in this case is whether or not there is substantial evidence in the record to support the Secretary's final decision that plaintiff did not become disabled within the meaning of the Social Security Act before his disability insurance status expired.

Pursuant to Section 205(g) of the Act, (42 U.S.C.A. § 405(g)), as a part of his answer, the Secretary has filed with the court a certified copy of the transcript of the administrative record including the evidence upon which the findings and decision of which plaintiff complains were based. Defendant has moved for a summary judgment and it is on this motion that brings the action to the attention of the court.

■■ In cases of this type the court is limited to a consideration of the question of whether or not the decision of the Secretary is supported by substantial evidence on the record when considered as a whole. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456; Blanks v. Richardson, 439 F.2d 1158, 1159 (5th Cir. 1971); Jackson v. Richardson, 449 F.2d

1326 (5th Cir., Opinion dated October 26, 1971). The court is not to retry the case *de novo* and may not substitute its judgment for that of the Secretary, Alsobrooks v. Gardner, 357 F.2d 110 (5th Cir. 1966); Bridges v. Gardner, 368 F. 2d 86, 90 (5th Cir. 1966); Jackson v. Richardson, *supra.* Nevertheless, substantial evidence required to uphold the Secretary's findings and decision is more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept to support a conclusion. Williams v. Finch, 440 F.2d 613, 617 (5th Cir. 1971); Bridges v. Gardner, *supra*; Merrell v. Gardner, 397 F. 2d 65 (5th Cir. 1968); Jackson v. Richardson, *supra.*

Plaintiff filed his initial application for disability benefits on September 7, 1965 alleging "heart trouble" as the cause of his disability. The attack occurred on May 4, 1965. This application was denied by the Secretary and plaintiff did not appeal from this decision.

Plaintiff was hospitalized as the result of the heart seizure from May 4 to May 24, 1965, and again from August 27 to August 30, 1965. After working as a carpenter at occasional odd jobs during 1966 and 1967, plaintiff suffered the second attack on May 20, 1968. Subsequently, plaintiff filed a second application for disability benefits on July 3, 1968. The course of the 1968 application and its fate at the hands of the Secretary has been hereinbefore mentioned.

Plaintiff is entitled to receive disability insurance benefits under the Act provided he is (a) insured for such benefits as such is determined pursuant to the provisions of Section 223(c) (1), of the Act, (42 U.S.C.A. § 423(c) (1)), (b) has not attained the age of 65 years, (c) has filed application for such benefits, and (d) is under a disability as defined by 42 U.S.C.A. § 423(d).[1]

---

1. This action involves several sections of the Social Security Act. The pertinent parts of the sections are:

Section 223(a) of the Act, as amended (42 U.S.C.A. § 423(a)), in its pertinent part, provides:

"(a) (1) Every individual who—

(A) is insured for disability insurance benefits (as determined under subsection (c) (1) of this section),

(B) has not attained the age of sixty-five,

(C) has filed application for disability insurance benefits, and

(D) is under a disability (as defined in subsection (d) of this section),

shall be entitled to a disability insurance benefit. . . ."

Section 223(c) (1) of the Act, as amended (42 U.S.C.A. § 423(c) (1)) in its pertinent part, provides:

"(c) For purposes of this section—

(1) An individual shall be insured for disability insurance benefits in any month if—

(A) he would have been a fully insured individual (as defined in section 414 of this title) had he attained age 62 (if a woman) or age 65 (if a man) and filed application for benefits under section 402(a) of this title on the first day of such month, and

(B) (i) if he had not less than twenty quarters of coverage during the forty-quarter period which ends with the quarter in which such month occurred, . . ."

Sections 213(a) (1) and (2) of the Act (42 U.S.C.A. §§ 413(a) (1) and (2)), in their pertinent parts, provide:

"(a) For the purposes of this subchapter—

(1) The term 'quarter', and the term 'calendar quarter', means a period of three calendar months ending on March 31, June 30, September 30, or December 31.

(2) The term 'quarter of coverage' means a quarter in which the individual has been paid $50 or more in wages . . . or for which he has been credited (as determined under section 412 of this title) with $100 or more of self-employment income, . . ."

Section 212(a) of the Act (42 U.S.C.A. § 412(a)), in its pertinent part, provides:

"For the purposes of determining average monthly wage and quarters of coverage the amount of self-employment income derived during any taxable year shall be credited to calendar quarters as follows:

(a) In the case of a taxable year which is a calendar year the self-employment income of such taxable year shall be credited equally to each quarter of such calendar year."

After a supplemental hearing on October 16, 1970, the hearing examiner, on December 10, 1970, recommended to the Appeals Council that a decision be made that plaintiff was not entitled to a period of disability or to disability insurance benefits under the provisions of Sections 216(i) and 223 of the Act (42 U.S.C.A. §§ 416(i) and 423).

The hearing examiner concluded that the substantial evidence in the record did not establish that plaintiff derived net self-employment income of at least $400 in the calendar year of 1966 and at least $400 in the calendar year of 1967, and, as the consequence, that plaintiff had no quarters of coverage from self-employment in the years 1966 and 1967. This finding is crucial to plaintiff's case, for without four quarters of coverage in each of these years plaintiff last met the special earnings requirements for disability purposes under the Act on March 31, 1966. The examiner also found that all of the medical evidence was substantially to the effect that plaintiff could and did engage in substantial gainful activity after March 31, 1966, and it was not until May 20, 1968 that plaintiff became disabled within the purview of the Act, more than two years after plaintiff ceased to meet the special earnings requirements of the Act. The hearing examiner concluded, since plaintiff was not under a "disability" as defined in the Act, as amended, at any time through March 31, 1966, plaintiff was not entitled to recover disability benefits under the Act.

While the findings of the Secretary as to any fact, if supported by substantial evidence, is conclusive, and the court may not retry the case *de novo*, substitute its judgment for that of the Secretary, or make its own independent appraisal of the evidence, the court may not "abdicate its traditional judicial function, nor escape its duty to scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence".[2] Bridges v. Gardner, *supra*.

The medical evidence in the case reflects, and, in the opinion of the court, substantiates the facts which follow:

Plaintiff stated in his application of July 3, 1968 that he became unable to work on May 20, 1968, because of his heart "condition". Subsequently, on January 9, 1969, at the hearing before the hearing examiner plaintiff altered the alleged date of "disability" onset to May 4, 1965.

The medical evidence before the hearing examiner revealed that plaintiff experienced two cardiovascular episodes, May 4, 1965 and May 20, 1968. Following the initial episode, diagnosed as an acute myocardial infarction, plaintiff

---

Section 223(d) (1) of the Act (42 U.S.C.A. § 423(d) (1)), in its pertinent part, provides:

"(d) (1) The term 'disability' means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . ."

Section 223(d) (2) (A) of the Act (42 U.S.C.A. § 423(d) (2) (A)), in its pertinent part, provides:

"(2) For purposes of paragraph (1) (A)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work".

Section 223(d) (5) of the Act (42 U.S.C.A. § 423(d) (5)) provides:

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

2. 368 F.2d at 90.

was hospitalized for twenty days, May 4 to May 24, 1965 and due to a recurrence of symptoms he was again hospitalized for a four-day period in August 1965.

On August 2, 1965, the plaintiff was examined at the Jackson, Mississippi, Veterans Administration's clinic in connection with his claim for VA benefits. Plaintiff told the examiner that he did not have precordial pain, but used nitroglycerin occasionally. On examination, the heart outline was not remarkable, and there were no murmurs. Chest examination indicated the heart and lungs were normal. Mentally, no hallucinations, delusions, or paranoid ideas were detected. An orthopedic examination revealed no limited joint motion and no muscle atrophy. The cardiovascular status was considered to be improving.

On September 29, 1965, Dr. Walter T. Taylor, plaintiff's attending physician, a cardiovascular specialist, reported that he had been seeing plaintiff every two weeks since May 4. The specialist stated that he expected "almost complete recovery" within a six-month period and indicated that "in all probability" plaintiff could "resume his normal occupation and activities in about 2 months." Plaintiff was not experiencing any anginal pain or shortness of breath while on restricted physical activities.

On November 13, 1968, Dr. Taylor reported that plaintiff suffered "an acute myocardial infarction" on May 4, 1965, at which time plaintiff was totally disabled. Dr. Taylor further reported that plaintiff had a recurrence of his heart pains and was readmitted to the hospital on August 30, 1965. Dr. Taylor expressed the opinion that plaintiff was totally disabled from the time of his heart attack on May 4, 1965, until a few months after plaintiff's hospitalization in August 1965. Dr. Taylor stated that he saw plaintiff in April 1966 and at that time he thought plaintiff "was able to do part time work" and "was only partially disabled during 1966 and 1967." Dr. Taylor stated in his report of November 13, 1968 that plaintiff had the

second acute myocardial infarction about May 20, 1968, and that up until that time plaintiff had continued to be partially disabled. It was Dr. Taylor's opinion, however, that after his second acute myocardial infarction, plaintiff became and is now totally and permanently disabled.

On June 19, 1968, the plaintiff was admitted to the hospital of the Veterans Administration, Memphis, Tennessee, for treatment of depression and emotional lability as well as for a followup on the second myocardial infarction which he experienced on May 20, 1968. In the admitting history, it was noted that after the May 1965 attack, plaintiff did well and had "resumed his regular duties" and was on anticoagulant medication. The history also reflects plaintiff's statement that while he did have some chest-pain episodes after May 1965 the pain responded to nitroglycerin.

Plaintiff submitted additional statements by his attending physician worthy of note. In a statement dated April 30, 1969, after reviewing the illness of plaintiff as theretofore reported by him, Dr. Taylor stated that following the May 4, 1965 episode, plaintiff's activities were markedly limited for about one year subsequent to plaintiff's hospitalization, and that from the spring of 1966 plaintiff "was able to do some part time supervisory work, but was not able to function in his previous capacity". Dr. Taylor expressed the further opinion that since the second attack May 20, 1968 plaintiff has been totally and permanently disabled.

After the 1970 hearing an additional statement was furnished to and considered by the Secretary. In this statement Dr. Taylor stated that plaintiff was totally disabled for a few months after his heart attack in May 1965 and that during this period plaintiff was diagnosed by the staff of the hospital of the Veterans Administration at Memphis, Tennessee, as suffering from a "depression and emotional lability following an acute myocardial infarction"

as a result of which physical limitations were placed upon plaintiff's activities and he was unable to secure any substantial gainful employment. Dr. Taylor commented, however, that he had the impression that plaintiff did have some part-time occupations of short duration, but nothing of a full-time or permanent nature.

The Appeals Council concluded from the evidence in the record, part of which has been summarized above, that plaintiff's heart attack of May 20, 1968 resulted in a severe functional impairment, but that the heart attack of May 4, 1965 did not have the same effect.

■ The court is of the opinion and so finds that there is substantial evidence in the record to support the Secretary's decision that plaintiff was not under a "disability" as defined in the Social Security Act, as amended, at any time through March 31, 1966.

The Secretary found that plaintiff became "disabled" on May 20, 1968. It is, therefore, important to determine whether the Secretary's decision that plaintiff did not have self-employment earnings of $400 or more in each of the calendar years 1966 and 1967 has substantial support in the record. In order to be insured for disability benefits, arising from the disability suffered by plaintiff as the consequence of the May 20, 1968 heart seizure, plaintiff must have been covered for the seven quarters involved in the self-employment earnings controversy (plaintiff has coverage from wages earned for the last quarter of 1967); otherwise, plaintiff would not have twenty quarters of coverage during the forty-quarter period which ended with the quarter in which May 1968 occurred.

There is not a great deal of conflict in the facts which bear upon this question. If the conclusion which the Secretary has drawn from the facts submitted to him for consideration is reasonable and substantially supported by the evidence, his decision must stand.

On October 16, 1969, after the Appeals Council on September 8, 1969 denied plaintiff's claim for disability benefits, plaintiff filed with the Internal Revenue Service an income tax and self-employment tax return for 1966, and, at the same time, an amended return for 1967. Plaintiff paid to the Collector of Internal Revenue the amount of self-employment taxes shown by the returns to be due for both years. In the 1966 return, plaintiff reported self-employment income of $1,403.94. In plaintiff's original 1967 return he did not report any self-employment income, but in his amended return he reported self-employment income of $451.41.

An accountant employed by plaintiff to prepare the returns testified at the supplemental hearing held on October 16, 1970 that he prepared the 1966 return and the 1967 amended return from information furnished by plaintiff, but that plaintiff was unable to produce records to substantiate the amounts which he had paid to subcontractors (who, according to plaintiff, performed most of the work on the jobs).

The additional self-employment earnings center around contractor's commissions or fees said to have been paid plaintiff for supervising the construction of a residence in each of the years 1966 and 1967.

During 1966 plaintiff supervised the construction of a residence for the T. Berry Realty Company, Clarksdale, Mississippi. A letter in the file from Mr. Berry states that he contracted with plaintiff to do certain building for him during the calendar year 1966 at a ten percent (10%) contracting fee. Mr. Berry submitted to the accountant cancelled checks totalling $17,093.40 which were issued by him during 1966 for the construction of this building. Mr. Berry also submitted with the checks a letter in which he stated that he did not have a written contract with plaintiff, and that the checks were given to plaintiff for material, labor (which plaintiff hired) and for commissions.

The accountant prepared the 1966 return using these checks and the employment information furnished by plaintiff without the benefit of other records as a basis of arriving at self-employment earnings of $1,403.94 for the year. Plaintiff represented to the accountant that he applied $700 of the money paid to him by Berry on his commission. The accountant determined from a study of the cancelled checks that Berry had paid plaintiff the sum of $4,837.57. From this amount, as a starting point, the accountant deducted the $700 retained by plaintiff and the sum of $525.58, representing ten percent (10%) of the materials purchased by Berry. After these deductions had been made there remained the sum of $3,611.99. The accountant determined that this balance consisted of the sum of $3,283.63 paid by plaintiff to the subcontractors and plaintiff's commission thereon of $328.36. Accordingly, the accountant listed the gross self-employment income for 1966 at the sum of $1,553.94 ($700 plus $525.58 and $328.36). The accountant deducted the travel expenses of plaintiff in the sum of $150 to arrive at the net figure of $1,403.94, upon which self-employment taxes were paid.

As has been noted, the only records from which the return was prepared consisted of the Berry letters and the cancelled checks. Plaintiff was unable to furnish any records concerning the amount paid by him to the subcontractors on the job.

The 1967 self-employment income was constructed along the same lines. Henry Ferguson submitted a letter to the accountant dated October 15, 1969, in which Ferguson stated that during 1967 he contracted with plaintiff to do certain building on a residence for him. Ferguson stated that he paid plaintiff $300 for his labor,[3] in addition to ten percent (10%) on the other labor and twenty percent (20%) of the materials furnished. Ferguson furnished cancelled checks showing that he paid plaintiff the sum of $2,701.81. Later, on March 30, 1970, Ferguson gave a statement to employees of the Social Security Administration that he had a written agreement[4] with plaintiff to build a house for him at 1309 May St., Clarksdale, Mississippi; that he (Ferguson) purchased all of the materials and paid plaintiff either $2600 or $2800 to build the house, with a $200 payment upon completion. Ferguson stated further that the contract provided that plaintiff should build the house according to specifications furnished by Ferguson, and that it was optional whether plaintiff personally performed the work or had someone else to do the work, as long as the residence was constructed according to specifications. Ferguson stated that he did not advance money to plaintiff for materials.

Basing his calculations on the information supplied by Ferguson and plaintiff and the checks submitted by Ferguson the accountant prepared an amended return for 1967, in which he reported self-employment earnings for social security purposes of $451.41.[5] The cancelled checks contained an item of $152.31, marked for supplies, and from the balance of $2,549.50, the accountant computed the self-employment earnings of $451.41, by using the proper percentages (ten percent (10%) on labor performed by others and twenty percent (20%) of the costs of materials) which he determined to be $555.41, deducting therefrom $104 for travel.

The hearing examiner, in his decision of December 10, 1970, specifically found that the substantial evidence in the case did not establish that plaintiff derived net self-employment income of at least $400 in the calendar year 1966 and at least $400 in the calendar year 1967, for

3. This amount was later reported to have been $400.

4. The record does not include this written contract.

5. This amount did not include the additional $100 to which reference has been made.

which reason plaintiff had no quarters of coverage from self-employment income in those years. These findings were adopted by the Appeals Council and thereupon became the decision of the Secretary.

The hearing examiner found that plaintiff in a signed statement dated March 10, 1970 explained that the total of all of the checks on each of the jobs (Berry and Ferguson) was used to determine gross income for the year in question; that the total of those checks on each job issued for certain purposes was subtracted from the gross income so computed to cover expenses, and that the balance represented plaintiff's net income for the year.

The examiner further found that plaintiff's accountant used the total of these checks as plaintiff's gross income from the job, and, in order to determine the amount paid by plaintiff for labor employed on the job by him, deducted from the gross income so computed, the amounts plaintiff claimed to have retained for his own use, and the percentages set forth in the agreements. The amount paid for labor could not be established from any record, nor did plaintiff recall the amounts. This method of arriving at plaintiff's self-employment income in 1966 and 1967 was held inadequate by the examiner. In arriving at this conclusion the examiner gave consideration to plaintiff's statements and representations made prior to the date upon which he filed the returns in question, in which plaintiff said that he did not have any self-employment income for the calendar years 1966 and 1967. Plaintiff stated in his application for disability benefits dated July 3, 1968, that during 1966, 1967 and 1968 he worked as a carpenter at odd jobs, and did not have net earnings from his trade or business of $400 or more in either 1966 or 1967. In a disability interview on July 3, 1968, plaintiff stated that he had worked at some small repair jobs around the community during 1966, 1967 and during 1968 before his heart attack

in that year, but that he did not clear $400 in any of the years. In a hearing held January 9, 1969, plaintiff testified that after 1960 he made no money out of his contracting business and that he and his family lived off of savings and support furnished by his son. At a subsequent hearing plaintiff denied making this statement. At the January 9, 1969 hearing plaintiff stated that he returned to work sometime in the summer of 1966 but did not remember the job and that from May 1965 until he went to work for the Jonestown Elevator Company in the latter part of 1967 he worked at three or four little jobs, but, for the most part, he and his family were supported by his son.

At a subsequent hearing, plaintiff stated that these statements were only partially correct as he did two contract jobs, one in 1966 and the other in 1967. Plaintiff further stated that he did not know why he did not mention this extensive contract work which he performed in 1966 and 1967, or the checks which he later submitted to substantiate the fact that he actually performed this work. The self-employment income shown on plaintiff's tax returns for 1966 and 1967 is limited solely to the Berry and Ferguson jobs. Although plaintiff stated that during 1966 and 1967 he worked at other small jobs in and about the community, these small jobs were not taken into account in the self-employment income shown on his tax returns. The record does not reflect whether plaintiff lost or made money on these jobs, or whether he personally performed the work or hired others to do it.

 The Appeals Council found that plaintiff's recollection, without supporting documentary evidence, was not sufficient to establish the amount of his net earnings from self-employment in 1966–1967. When all the evidence in the case is taken into account the court cannot say that the Appeals Council's determination of this issue is without substantial support in the record.

The fact that plaintiff reported self-employment income for the calendar years 1966 and 1967 and paid taxes thereon is not binding on the Secretary on the question of whether plaintiff actually had such income. The Seventh Circuit held in Bender v. Celebrezze, (1964) 332 F.2d 113, at 116 "that under the Social Security Act the actual receipt of such income is the crucial test, not the reporting thereof nor the payment of taxes on the amount so reported". It has also been held "that 'the Social Security Administration is not only privileged, but, in questionable cases, it is obligated to investigate behind the form of self-employment tax returns which an individual has filed. *Furthermore the Regulations provide that claimant shall submit proper and complete evidence in order to substantiate the amount of self-employment income reported, which records are subject to such verification as is deemed necessary to insure their accuracy.'*" Hernandez v. United States Secretary of Health, Education and Welfare, 307 F.Supp. 338, 342 (D.Puerto Rico, 1969).

The Secretary, and not the court, is charged with the duty of weighing the evidence and resolving conflicts in the testimony. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Moreover, the credibility of the testimony of the witnesses is to be judged on the basis of any inconsistencies in such testimony as well as on the witness' information and interest. Vicars v. Gardner, 285 F. Supp. 527 (W.D.Va.1968).

After a careful review of the record, including the administrative transcript, the court concludes that there is substantial evidence in the record to support the Secretary's conclusion that plaintiff has not established that he had net self-employment income of at least $400 in 1966 or 1967, and that plaintiff last met the special earnings requirements of the Act for disability purposes on March 31, 1966.

The court concludes, therefore, that the Secretary's decision must be sustained and upheld.

An appropriate order sustaining defendant's motion for summary judgment will be entered by the court.