**William C. McMULLIN**

v.

**Elliot L. RICHARDSON, Secretary Health, Education & Welfare.**

**Civ. A. No. 226–72–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 8, 1972.

W. V. Rennie, Petersburg, Va., for plaintiff.

Raymond A. Carpenter, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

William C. McMullin brings an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary in which it was held that he was not entitled to disability benefits upon an application filed May 4, 1971. The sole issue before the Court is whether the final decision of the Secretary is based upon substantial evidence. See 42 U.S.C. § 405(g). The defendant has moved for summary judgment and the plaintiff, given an opportunity to respond, has chosen to submit his case on the record as it now stands. The matter is ready for disposition.

The function of the Court is not to try this matter de novo, nor to resolve mere conflicts in the evidence. The Court, however, is duty bound to give careful scrutiny to the entire record to assure that there is a sound foundation for the Secretary's findings, and that his decision is rational. Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971); Bridges v. Gardner, 368 F.2d 86 (5th Cir. 1966); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1954); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

The facts are not in dispute. They are, as set forth by the defendant, as follows:

When the plaintiff filed his application for disability benefits and for a pe-

riod of disability on May 4, 1971, he alleged that he became unable to work on April 30, 1971, at age 56 due to "arteriosclerosis obliterans, diabetes mellitus, hypertension, metatarsalgia, degenerative arthritis, and varicose veins." According to the Report of Disability Interview, plaintiff indicated that he had "no energy" and that walking even three blocks would cause him to have pain in his feet and back. He also indicated that he felt "lightheaded" and that his equilibrium was disturbed because of high blood pressure. The plaintiff further asserted that his physician had prescribed a diabetic diet and a pill for diabetes. The plaintiff also indicated that his doctor advised him to have regular check-ups, to have no alcohol, and not to over-exert. Plaintiff told the interviewer that he was given a medical discharge from the United States Army on April 30, 1971, due to the variety of ailments discussed above.

Records from Kenner Army Hospital, Fort Lee, Virginia, show that plaintiff was given a physical examination on December 9, 1970 to determine his eligibility for disability retirement from the Army. It was recommended at that time that plaintiff appear before a Medical Board. The Medical Board proceedings for plaintiff's claim began on February 12, 1971. The clinical record which was a part of these proceedings included plaintiff's past medical history. This showed that diffuse nodular goiter was observed on surgical consultation in April 1964 and a subtotal thyroidectomy was performed. In a medical consultation in January 1965, diabetes mellitus was diagnosed and diet and medications were prescribed to control the condition. Also, in 1967, his blood pressure was elevated and he was placed on tranquilizers to control this condition. Examination on the gastro-intestinal service in January 1970 revealed an impression of abnormal liver function and in December 1970, on podiatry consultation, a diagnosis of metatarsalgia (pain in the part of the foot between the instep and the toes)

bilaterally. Physical examination on December 9, 1970 showed that the plaintiff was 6 feet 1½ inches tall, of ruddy complexion and medium build and weighing 204 pounds. Blood pressure readings were 160/100 (sitting), 170/110 (recumbent) and 150/94 (standing). Neurological examination revealed decreased vibratory sensations over the right lower extremity. There were bilateral varicosities on the lower extremity, worse on the right. The liver was enlarged, palpable 3 fingers below the rib margin. Electrocardiogram studies on February 12, 1971, were completely normal. Chest on X-ray examination was within normal limits. X-rays of both feet showed no bony abnormality. On X-ray examination of the lumbar spine, there was an impression of degenerative disease of at least four lumbar vertebrae with narrowing of the disc space at the fifth lumbar and first sacral vertebrae. Upper gastrointestinal series was normal while barium examination of colon showed irregularity, probably representing early diverticulosis (a mucosal pouch which protrudes from the intestinal lumen through the bowel wall. The diagnoses included diabetes mellitus controlled on diet, mild essential hypertension, bilateral metatarsalgia, early diverticulosis, bilateral varicosities of the lower extremities, degenerative joint disease of the lumbar spine and arteriosclerotic heart disease evidenced by mild peripheral vascular disease. He was considered unfit for further military duty under the total man concept. When the plaintiff was examined on March 8, 1971, an additional diagnosis was given of possible Berger's disease (an abnormal sensation as burning, prickling of lower limbs) and probably small vessel arteriolar disease. Examination of extremities showed no clubbing, syanosis or edema and there were no sensory deficits in the legs. Orthopedic evaluation on March 23, 1971 showed mild limitation of motion of the back. Examination of the right knee revealed normal range of motion and nor-

mal findings otherwise. Examination of both feet revealed thinning of the plantar (sole of the foot) fat pad under the metatarsal heads and no abnormal callosities. The diagnoses were osteoarthritis of the lumbosacral spine, mild and of the right knee minimal and metatarsalgia, bilateral, moderate.

Following the extensive physical examinations discussed above, the Physical Evaluation Board, convened at the Walter Reed Army Medical Center, Washington, D.C., found the plaintiff on April 6, 1970, to be physically unfit with a combined rating of 50 percent and recommended that he be permanently retired from the service.

A report from the Outpatient Service of the Veterans Administration Hospital in Richmond, Virginia, showed that the plaintiff was given a compensation physical examination on October 13, 1971. Heart examination showed normal sinus rhythm and no murmurs. Blood pressure readings were 160/80 (sitting), 154/84, 150/86 (recumbent) and 162/84, 150/82 (sitting, after exercise). Examination of varicose veins revealed mild bilateral early small broken veins about the ankle and dorsal aspect of the lower extremity. Musculoskeletal system examination showed normal spine motion and an ability to flex spine to within ten inches of touching the floor. Neurological examination showed arteriosclerosis obliterans (a condition marked by loss of elasticity, thickening and hardening of the arteries causing complete obliteration of the lumen of the artery), early, suspected of lower extremities bilaterally. This was manifested by cold, sensitivity, diminished distal pulse. Circulatory impairment was minimal. Following this October 13 examination, the Veterans Administration by letter of November 16,1971, continued plaintiff's 100 percent prestabilization rating to May 1, 1972, and informed him that, based on unemployability, the 100 percent evaluation would continue from May 1, 1972.

The plaintiff, who was born on February 24, 1915, obtained a Bachelor of Science degree in Business Administration at Virginia Polytechnic Institute, Blacksburg, Virginia in 1937. In a resume presented to the Hearing Examiner, plaintiff reviewed his civilian and military careers. In civilian life, he was employed in the insurance business, in sales, administration, underwriting, inspection and examination of fire insurance contracts. Also, he worked as a fire prevention engineer and salesman to retail and wholesale laundry and dry cleaning plants. He was vice-president and general manager of a wire products company and left this to start his own wire staple manufacturing business. He entered the military service in January 1942 as a second lieutenant in the Army and was separated from the service in February 1947. Plaintiff was recalled to active duty as a commissioned officer in March 1952 and continued in military service until he was retired on disability on April 30, 1971. He receives a disability payment of $1170 per month. He has had many responsible positions during his Army service, including comptroller, assistant professor of the Military Science and Tactics at Dartmouth College, and Commanding Officer of the United States Army Element of the Allied Forces in central Europe. He was appointed Commanding Officer of the United States Army Garrison at Camp Pickett, Virginia, on March 15, 1967 and continued to serve in this capacity until his retirement. When he retired from military service on disability, he had completed 24 years and nine months of active service.

The plaintiff is married, the household consisting of himself, his wife, two children and a married daughter. In the past, he actively participated in youth activities in various communities where he had resided and had served as chairman of numerous charitable fund drives. The plaintiff testified that since his retirement he helps his wife around the house doing a few household chores

and cutting the grass. The Report of Disability Interview of May 4, 1971, indicates that plaintiff plays golf occasionally. He has no difficulties in caring for his personal needs.

Dr. Earl A. Glosser, a vocational expert, testified as to the plaintiff's vocational potential after having observed him at the hearing, examined the evidence and heard the testimony. At the present time, Dr. Glosser is Director of the Counseling Center at the University of Virginia. He was given the assumption that the plaintiff was limited to activities which would require him to be on his feet no more than 10 minutes at a time, no lifting of more than 20 pounds, and not even this on a continuous basis and no kneeling, squatting and bending. Based on this assumption, he was asked to give his opinion as to what jobs this plaintiff had the residual capacity to engage in. The vocational consultant testified that within the above limitations, the plaintiff could fill such jobs as administrative assistant in insurance companies, life underwriting trainee, travel representative in travel agencies and job counselor with private placement agencies. He further testified that the enumerated jobs exist in the local economy and national economy.

■ In order to qualify for disability benefits under § 223 of the Social Security Act, 42 U.S.C. § 423, there must be present:

1. A medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve months (42 U.S.C. § 423(d)(1)(A) and,

2. A factual determination that the impairment actually renders the plaintiff unable to engage in any gainful employment. See Hicks v. Richardson, No. 71–2196 (4th Cir., July 24, 1972); Thomas, *supra*.

Section 223(d)(2)(A) of the Act further defines "disability" as follows:

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

■ Upon the hearing, the vocational expert was questioned as to whether, in light of the plaintiff's above described illnesses and age (57), he could reasonably be expected to procure employment along the lines suggested. The ultimate response was to the effect that the witness had no knowledge of any such person being so employed. This, however, does not go to the issue as to whether plaintiff could engage in any type of substantial gainful activity. The vocational expert did state that in his opinion work was available for the plaintiff, and this was uncontroverted.

That being so, the Court finds that the hearing examiner's decision is supported by substantial evidence. Having reached that determination, the Court is barred from further inquiry.

Summary judgment will be granted for the defendant.

An order shall issue.