Homer A. CATRON

v.

Caspar WEINBERGER, Secretary
Health, Education & Welfare.

Civ. A. No. 74–0360–R.

United States District Court.
E. D. Virginia,
Richmond Division.

May 30, 1975.

W. V. Rennie, Petersburg, Va., for plaintiff.

**1012**

David G. Lowe, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Homer A. Catron brings an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary in which it was held that he was not entitled to disability benefits upon an application filed May 14, 1973. The sole issue before the Court is whether final decision of the Secretary is based upon substantial evidence. See 42 U.S.C. § 405(g). The plaintiff and the defendant have each moved for summary judgment. The matter is ready for disposition.

█ The function of the Court is not to try this matter *de novo,* nor to resolve mere conflicts in the evidence. The Court, however, is duty bound to give careful scrutiny to the entire record to assure that there is a sound foundation for the Secretary's findings, and that his decision is rational. Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971); Bridges v. Gardner, 368 F.2d 86 (5th Cir. 1966); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1954); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

The facts are not in dispute and are as follows: Plaintiff filed an application for a period of disability and for disability insurance benefits on May 14, 1973, alleging that he became unable to work on March 29, 1973 at age 47. The application was denied initially and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration, after the Virginia State Agency, upon evaluation of the evidence by a physician and disability examiners, had found that plaintiff was not under a disability. The administrative law judge, before whom plaintiff, his representative and a vocational expert appeared, considered the case *de novo,* and on May 15, 1974, found that plaintiff was not under a disability. The administrative law judge's decision became the final decision of the Secretary when the Appeals Council, after considering additional evidence, approved that decision on July 11, 1974.

Plaintiff alleged that he became unable to work on March 29, 1973, at age 47, because of "residuals of parathyroidectomy for adenoma and recurrent bilateral renal calculi, poorly controlled hypertension and rheumatoid arthritis of hips, knees, ankles, feet, heels and lumbar region." As a result of the conditions named, his disability rating of 30% was increased to 60% by the Veteran's Administration (VA) effective February 1972. In March 1973, the VA found he was entitled to 100% based on unemployability. He was a high school graduate with several college credits and had worked as a communications operator and supervisor in the Air Force.

Records of plaintiff's treatment during 1967–1968 at the U.S. Naval Hospital, Portsmouth, Virginia, showed that a parathyroid adenoma was removed in 1964. Also, he had a history of having multiple renal calculi which had passed, but which caused pain when present. In March 1972, kidney studies revealed kidney stones and it was found that his blood pressure was 180/110. By June 1972, medication had resulted in his blood pressure dropping to 150/100 then to 130/80. In the following month kidney studies revealed small calcifications bilaterally. His corrected vision as of September 1972 was 20/20 in both eyes.

In October 1972, an upper gastrointestinal series was normal except for the previously noted bilateral renal calcifications. A month later plaintiff's blood pressure was 180/105. He was complaining of pain and stiffness in several joints and back. The examination showed a full range of motion in all joints and laboratory studies were normal. The diagnosis was questionable.

Plaintiff was examined in December 1972 by Dr. Charles L. Cooke, a specialist in internal medicine. He was given injections for heel pain probably caused by a calcaneal spur. When seen again by Dr. Cooke in January 1973 there had

been some improvement in the heel condition. Tests for rheumatoid arthritis did not establish the presence of that condition and Dr. Cooke felt that plaintiff's difficulty stemmed from subcalcaneal bursitis involving the right heel. If further injections did not improve the condition, Dr. Cooke recommended low dose x-ray treatment to the area; treatment which usually provided quite prompt and thorough relief.

Dr. Melvin S. Livengood, a podiatrist at Kenner Army Hospital, examined plaintiff in January 1973 and diagnosed his condition as a heel irregularity and mild spur formation on the right oscalcis. The plaintiff was "ok for employment," however his heel pain might slow him down. In March 1973, plaintiff appeared at the outpatient clinic of the VA Hospital, Richmond, Virginia, for reevaluation of his hypertension. The condition was found to be under control with therapy. The heel pain was most symptomatic causing persistent pain especially on walking and standing. The kidney condition caused pain intermittently. Plaintiff returned to the outpatient clinic in May 1973 requesting medication and complaining of heel pain. Examinations by specialists were recommended, but he preferred to wait. As of August 1973, plaintiff had a groin rash. He complained of back pain and had difficulty walking. He was given medications.

Dr. Clyde H. Dougherty, a general practitioner, examined plaintiff in January 1974 and noted he walked with difficulty using a cane. Dr. Dougherty reported that plaintiff had considerable difficulty with his feet due to arthritic changes. His blood pressure was 140/90 and was kept under control by medication. Plaintiff complained of tinnitus unimproved by treatment. Additionally, Dr. Dougherty noted that plaintiff had a history of kidney stones which could only be removed by surgery; however, an operation had not been deemed advisable. Dr. Dougherty considered plaintiff permanently and totally disabled by arthritis and believed that his other troubles would be aggravated if he were to work.

In January 1974, plaintiff was seen at the VA Hospital's outpatient department for follow-up treatment. It was noted that he had been declared 100% disabled by the VA because of the residuals of the parathyroidectomy and recurrent renal calculi, poorly controlled, hypertension and rheumatoid arthritis. His blood pressure was 110/82 and he had not passed any stones since October 1973.

At his hearing in March 1974, plaintiff testified that he was age 48, married and had three daughters. He had been a communications operator, and for 15 years a communications supervisor in the Air Force. After leaving the service in June 1966, he had been an insurance salesman and postal clerk. Between October 1968 and March 1973 he worked as a communications operator—a fairly light job which at times required very little activity. His hypertension had been brought under control and his ability to bear weight was his primary problem. He went to the hospital for outpatient treatment about every two months and his daily activities included watching TV and coin collecting. He drove a car when necessary and received $495 per month plus extras for his dependents in disability payments by the VA.

Dr. Andrew Beale, a vocational expert, testified at the hearing after reviewing the written evidence, observing plaintiff, and listening to the oral testimony. In response to the administrative law judge's questions, Dr. Beale stated, first, that he did not believe plaintiff could perform work on a sustained basis nor did he believe plaintiff could do any of his previous jobs. Next, Dr. Beale stated that even considering plaintiff's relatively young age, his high school and college education and his other skills, there was no other type of gainful activity plaintiff could perform because of his inability to work on a sustained and

continuing basis. Finally, in response to the administrative law judge's assumption that plaintiff was capable of light or sedentary activities, Dr. Beale testified that he would then be qualified to perform his previous work as a communications operator as well as numerous other jobs which exist in significant numbers in the local area.

In order to qualify for disability benefits under § 223 of the Social Security Act, 42 U.S.C. § 423, there must be present:

1. A medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve months (42 U.S.C. § 423(d)(1)(A)) and,

2. A factual determination that the impairment actually renders the plaintiff unable to engage in any gainful employment. See Hicks v. Richardson, No. 71–2196 (4th Cir., July 24, 1972); *Thomas, supra.*

Section 223(d)(2)(A) of the Act further defines "disability" as follows:

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Plaintiff's primary contention on appeal is that the Secretary has overlooked what he considers to be a vital element in his case, that is the pain he suffers due to both his arthritic and kidney conditions. Plaintiff also submits that in questioning the vocational expert present at his hearing, the administrative law judge ignored plaintiff's testimony of the pain associated with his kidney condition and that the hypothesis the administrative law judge propounded was improper, leading, and based upon only a partial view of the evidence.

■■ While, as a part of the Secretary's findings, he concluded that the preponderance of the evidence fails to establish any medical basis for the degree of pain alleged by the plaintiff, it has previously been held that "pain unaccompanied by any objectively observable symptoms may be so real and so intense as to be disabling, and will support a claim for disability benefits." Ber v. Celebrezze, 332 F.2d 293, 299 (2d Cir. 1964), cited in Sayers v. Gardner, 380 F.2d 940, 949 (6th Cir. 1967). Moreover, based upon the medical evidence and transcript of the administrative hearing now before it, the Court finds that the Secretary's conclusion that plaintiff was physically capable of performing substantial gainful activity in light and sedentary jobs not requiring prolonged standing or walking was not supported by substantial evidence.

■■ The Court further finds that, on the basis of Dr. Beale's testimony, plaintiff carried his burden of proving that he was unable to return to his regular employment and that the burden then shifted to the Secretary to show that plaintiff was able to perform other work existing in the national economy. Given v. Weinberger, 380 F.Supp. 150 (S.D.W.Va.1974); Eppard v. Weinberger, 378 F.Supp. 970 (W.D.Va.1974). Since, however, the Court has found that plaintiff was not able to perform light and sedentary work as hypothesized by the administrative law judge, the vocational expert's mere recitation of all such jobs locally available fails to justify the Secretary's finding on the ultimate issue raised.

Accordingly, the Court will deny the Secretary's motion for summary judgment, and will grant the plaintiff's motion for summary judgment.

An appropriate order will issue.